UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CADY NOLAND,

                *Plaintiff*,

     -against-

GALERIE MICHAEL JANSSEN,
MICHAEL JANSSEN, WILHELM
SCHURMANN, and KOW,

             *Defendants*.

ECF CASE

1:17-CV-05452 (JPO)


**MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**


Dated: 2018-July-06


CAHILL COSSU NOH & ROBINSON LLP

Megan E. Noh
John R. Cahill
Aimée Scala
70 West 40th Street
New York, NY 10018
(212) 719-4400

*Attorneys for Defendants
Galerie Michael Janssen, Michael
Janssen, Wilhelm Schürmann, and KOW*

**TABLE OF CONTENTS**

<strong>Page</strong>

TABLE OF AUTHORITIES ................................................................................. iii

PRELIMINARY STATEMENT ............................................................................ 1

FACTUAL BACKGROUND ................................................................................ 2

    I.     The Creation and First Sale of the Work ............................................... 2

    II.    The Work's Deterioration and Subsequent Restoration .......................... 2

    III.   The Display, Marketing, and/or Resale of the Work ............................... 3

    IV.   Denial of Copyright Protection for the Work ........................................ 3

    V.    Noland's History of Attempts to Interfere with Purchasers' Rights ....................... 3

ARGUMENT ...................................................................................................... 4

    I.     NONE OF THE DEFENDANTS
          INFRINGED ANY COPYRIGHTS IN THE WORK ............................. 5

        A.  Noland's Infringement Claims Fail Under U.S. Law ....................... 5

            1.   *The Principle of Copyright*
                 *Territoriality Bars the Application of U.S. Law* ............................. 5

            2.   *Noland Fails to Plead the Existence*
                 *of a Copy; the SAC Makes Plain that*
                 *Defendants Did Not Make a Copy of the Work* ............................. 5

            3.   *Even Had Defendants Copied the*
                 *Work, it is Not Protectable Under the*
                 *Copyright Act, as it Lacks Sufficient Originality* ............................. 7

        B.  Noland's Infringement Claims Also Fail Under German Law ....................... 11

            1.   *The Work Does Not Qualify*
                 *for Protection Under German Law* ............................. 11

             2.   *Defendants Did Not*
                 *Infringe the Work Under German Law* ............................. 11

            3.   *Noland's Claims are*
                 *Time-Barred Under German Law* ............................. 12

        C.  In the Absence of Legitimate Copyrights, Noland's Claims of
           Vicarious and/or Contributory Infringement Must Also be Dismissed ........... 12

i

II.     NOLAND IS NOT ENTITLED TO A DECLARATORY
        JUDGMENT THAT HER MORAL RIGHTS HAVE BEEN VIOLATED..........14

        A.  The Work is Not Entitled to U.S. Moral Rights Protection ...........................14

            1.      *The Work Predates VARA* ...............................................................14

            2.      *Even Had it Been Created After*
                    *VARA's Enactment, the Work is Not a*
                    *Protectable Work of Visual Art Under VARA* ................................15

            3.      *Noland Fails to Adequately Plead*
                    *Distortion, Mutilation, Destruction,*
                    *or Other Modification Under VARA* ...............................................15

        B.  The Work Is Not Entitled to German Moral Rights Protection .......................17

III.    PLAINTIFF'S NEGIGLENCE CLAIM ALSO FAILS .......................................18

        A.  There Was No Negligence Under U.S. Law .....................................................18

            1.      *Noland Has Failed to Allege the Requisite Duty of Care* ...............18

            2.      *Under 17 U.S.C. § 109(a), Schürmann Has*
                    *the Right to Repair—or Even Destroy—His Property* ....................20

        B.  Nor Was There Negligence Under German Law ..............................................21

IV.     IN THE ALTERNATIVE, NOLAND'S CLAIMS
        ARE SUBJECT TO DISMISSAL PURSUANT TO
        THE DOCTRINE OF *FORUM NON CONVENIENS* ...........................................21

        A.  Germany is an Adequate Alternative Forum .....................................................22

        B.  The Public and Private Interest Factors Strongly
            Favor Adjudication of Noland's Claims in Germany .......................................23

V.      THE COMPLAINT SHOULD BE DISMISSED WITH
        PREJUDICE, AS FURTHER AMENDMENT WOULD BE FUTILE .................24

CONCLUSION...........................................................................................................................25

**TABLE OF AUTHORITIES**

*Ahbez v. Edwin H. Morris & Co.*,
548 F. Supp. 664 (S.D.N.Y. 1982) .......................................................................... 5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................... 4

*Berry v. Deutsche Bank Tr. Co. Americas*,
No. 07-CV-7634 (WHP), 2008 WL 4694968 (S.D.N.Y. Oct. 21, 2008) .................... 14

*Blazon, Inc. v. DeLuxe Game Corp.*,
268 F. Supp. 416 (S.D.N.Y. 1965) .......................................................................... 6

*Boisson v. Banian, Ltd*,
273 F.3d 262, 268 (2d Cir. 2001) ............................................................................ 9

*Branch v. Ogilvy & Mather, Inc.*,
No. 89-CV-2440 (LLS), 1990 WL 74540 (S.D.N.Y. May 30, 1990) ........................... 8

*BWP Media USA Inc. v. Hollywood Fan Sites, LLC*,
69 F. Supp. 3d 342 (S.D.N.Y. 2014) ........................................................................ 14

*Capitol Records, LLC v. ReDigi Inc.*,
934 F. Supp. 2d 640 (S.D.N.Y. 2013) .................................................................... 6-7

*Carter v. Helmsley-Spear, Inc.*,
861 F. Supp. 303 (S.D.N.Y. 1994) ..................................................................... 16-17

*Carter v. Helmsley-Spear, Inc.*,
71 F.3d 77 (2d Cir. 1995) ....................................................................................... 14

*Chirag v. MT Marida Marguerite Schiffahrts*,
604 F. App'x 16 (2d Cir. 2015) ......................................................................... 22-23

*City of Amsterdam v. Daniel Goldreyer, Ltd.*,
882 F. Supp. 1273 (E.D.N.Y. 1995) ................................................................... 18, 19

*Davis v. Brown*,
No. 12-CV-1906 (SJF) (SIL), 2014 WL 4628666 (E.D.N.Y. Sept. 15, 2014) .............. 19

*DBC of New York, Inc. v. Merit Diamond Corp.*,
768 F. Supp. 414 (S.D.N.Y. 1991) .......................................................................... 8

*DDR Constr. Servs., Inc. v. Siemens Indus., Inc.*,
770 F. Supp. 2d 627 (S.D.N.Y. 2011) ...................................................................... 18

iii

*Doan v. Am. Book Co.*,
105 F. 772 (7th Cir. 1901) .................................................................................................... 20

*Durham Indus., Inc. v. Tomy Corp.*,
630 F.2d 905 (2d Cir. 1980)................................................................................................. 10

*Earth Flag Ltd. v. Alamo Flag Co.*,
153 F. Supp. 2d 349 (S.D.N.Y. 2001)..................................................................................... 9

*Estate of Graham v. Sotheby's, Inc.*,
178 F. Supp. 3d 974 (C.D. Cal. 2016) .......................................................................... 20, 21

*Fagan v. Deutsche Bundesbank*,
438 F. Supp. 2d 376 (S.D.N.Y. 2006)............................................................................. 22, 24

*Faulkner v. Nat'l Geographic Enterprises Inc.*,
409 F.3d 26 (2d Cir. 2005)................................................................................................... 12

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
499 U.S. 340 (1991)............................................................................................................... 8

*Flack v. Friends of Queen Catherine Inc.*,
139 F. Supp. 2d 526 (S.D.N.Y. 2001)............................................................................. 16, 17

*Florabelle Flowers, Inc. v. Joseph Markovits, Inc.*,
296 F. Supp. 304 (S.D.N.Y. 1968) ...................................................................................... 10

*Gardenia Flowers, Inc. v. Joseph Markovits, Inc.*,
280 F. Supp. 776 (S.D.N.Y. 1968) ........................................................................................ 8

*Gebhardt v. Allspect, Inc.*,
96 F. Supp. 2d 331 (S.D.N.Y. 2000)................................................................................... 4, 6

*Gee v. CBS, Inc.*,
471 F. Supp. 600 (E.D. Pa. 1979) ....................................................................................... 24

*Gordon v. Invisible Children, Inc.*,
No. 14-CV-4122 (PGG), 2015 WL 5671919 (S.D.N.Y. Sept. 24, 2015)................................... 24

*Harrison v. Maynard, Merrill & Co.*,
61 F. 689 (2d Cir. 1894) ..................................................................................................... 20

*Horizon Comics Prods., Inc. v. Marvel Entm't, LLC*,
246 F. Supp. 3d 937 (S.D.N.Y. 2017)................................................................................. 5-6, 9

iv

*Kamanou v. Exec. Sec'y of Comm'n of Econ. Cmty. of W. African States*,
No. 10-CV-7286 (GBD) (JLC), 2012 WL 162708 (S.D.N.Y. Jan. 19, 2012) ............................... 19

*Kelley v. Chicago Park Dist.*,
635 F.3d 290 (7th Cir. 2011) ................................................................................. 15

*Koster v. (Am.) Lumbermens Mut. Cas. Co.*,
330 U.S. 518 (1947) ............................................................................................. 22

*L. Batlin & Son, Inc. v. Snyder*,
536 F.2d 486 (2d Cir. 1976) ................................................................................... 10

*Lantern Press, Inc. v. Amer. Publishers Co.*,
419 F. Supp. 1267 (E.D.N.Y. 1976) .................................................................... 7, 20

*Lopez v. BigCommerce, Inc.*,
No. 16-CV-8970 (JPO), 2017 WL 3278932 (S.D.N.Y. Aug. 1, 2017) ......................... 7

*Malester v. Adamo*,
No. 09-CV-9347 (GBD), 2010 WL 5065865 (S.D.N.Y. Dec. 8, 2010) ...................... 24

*Marc Jancou Fine Art Ltd. v. Sotheby's, Inc.*,
967 N.Y.S.2d 649 (N.Y. App. Div. 2013) ................................................................. 4

*Marvullo v. Gruner & Jahr*,
105 F. Supp. 2d 225 (S.D.N.Y. 2000) ..................................................................... 13

*Mazer v. Stein*,
347 U.S. 201 (1954) .............................................................................................. 5

*Mechigian v. Art Capital Corp.*,
612 F. Supp. 1421 (S.D.N.Y. 1985) ....................................................................... 18

*Mueller v. Janssen*,
225 F. Supp. 3d 201 (S.D.N.Y. 2016) ................................................................. 3, 21

*Nobile v Watts*,
No. 17-CV-597 (KBF), 2017 WL 4679464 (S.D.N.Y. Oct. 16, 2017) ......................... 8

*Past Pluto Prods. Corp. v. Dana*,
627 F. Supp. 1435 (S.D.N.Y. 1986) ......................................................................... 8

*Premier Fabrics, Inc. v. Woodland Trading Inc.*,
42 F. Supp. 3d 549 (S.D.N.Y. 2014) ...................................................................... 13

v

*Shaw v. Rizzoli Int'l Pub., Inc.*,
No. 96 CIV. 4259 JGK, 1999 WL 160084 (S.D.N.Y. Mar. 23, 1999) ........................................... 5

*State Trading Corp. of India v. Assuranceforeningen Skuld*,
921 F.2d 409 (2d Cir. 1990).................................................................................................24-25

*Stewart v. Adidas A.G.*,
No. 96-CV-6670 (DLC), 1997 WL 218431 (S.D.N.Y. Apr. 30, 1997).................................. 22, 23

*Teevee Toons, Inc. v. Gerhard Schubert GmbH*,
No. 00-CV-5189 (RCC), 2006 WL 2463537 (S.D.N.Y. Aug. 23, 2006) .................................... 19

*Tobin v. The Rector*,
No. 17-CV-2622 (LGS), 2017 WL 5466705 (S.D.N.Y. Nov. 14, 2017).................................... 17

*Towle Mfg. Co. v. Godinger Silver Art Co., Ltd.*,
612 F. Supp. 986 (S.D.N.Y. 1985) ......................................................................................... 10

*Tzaras v. Evergreen Int'l Spot Trading, Inc.*,
No 01-CV-10726 (LAP), 2003 WL 470611 (S.D.N.Y. Feb. 25, 2003) ..................................... 18

*Update Art, Inc. v. Modiin Pub., Ltd.*,
843 F.2d 67 (2d Cir. 1988)...................................................................................................... 5

*Vine v. Beneficial Fin. Co.*,
374 F.2d 627 (2d Cir. 1967).................................................................................................. 25

*Wallert v. Atlan*,
141 F. Supp. 3d 258 (S.D.N.Y. 2015).................................................................................. 22, 24

*Walt Disney Prods. v. Basmajian*,
600 F. Supp. 439 (S.D.N.Y. 1984) ......................................................................................... 20

*Williams v. A & E Television Networks*,
122 F. Supp. 3d 157 (S.D.N.Y. 2015).................................................................................... 12

*Wolk v. Kodak Imaging Network, Inc.*,
840 F. Supp. 2d 724, 750-51 (S.D.N.Y. 2012) ........................................................................ 13

*Zalewski v. Cicero Builder Dev., Inc.*,
754 F.3d 95, 104-05 (2d Cir. 2014) ...................................................................................... 9, 10

**Constitutions, Treaties, Statutes, Regulations & Rules**

U.S. Const. Art. I § 8, cl. 8.............................................................................................. 10

Berne Convention for the Protection of Literary and Artistic Works,
as amended 1979-Sept.-28, S. Treaty Doc. No. 99-27 (1986), Art. 5 .......................... 23

17 U.S.C. § 101 ....................................................................................................... 5, 15

17 U.S.C. § 102 ........................................................................................................... 8

17 U.S.C. § 105 ........................................................................................................... 9

17 U.S.C. § 106 ........................................................................................................... 7

17 U.S.C. § 106A ........................................................................................ 14, 15, 16, 19

17 U.S.C. § 109 ...................................................................................................... 7, 20

FED. R. CIV. P. 8 ....................................................................................................... 13

FED. R. CIV. P. 12 .................................................................................................... 1, 4

FED. R. CIV. P. 44.1 .................................................................................................. 12

**Articles & Treatises**

Cait Munro, *Is Cady Noland More Difficult to Work
with than Richard Prince?*, ARTNET, 2014-November-10 ............................................. 4

COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES § 310.5 (3rd ed. 2017)................................ 9

Defendants Galerie Michael Janssen (the "Galerie"), Michael Janssen ("Janssen"), Wilhelm Schürmann ("Schürmann") and KOW (collectively, "Defendants") respectfully submit this Memorandum of Law in support of their motion, pursuant to FED. R. CIV. P. 12(b)(6), to dismiss the claims of Plaintiff Cady Noland ("Noland" or "Plaintiff") with prejudice.[1]

### PRELIMINARY STATEMENT

The Second Amended Complaint (the "SAC") is the latest installment in a desperate but futile search for a cause of action by an artist with a history of trying to keep her creations from being sold or displayed. Noland's revised pleading does not alter its tortured theory of "restoration-as-copying." Neither has Noland altered her vague allegations of negligence, which still fail to assert any basis for the requisite duty of care. These arguments simply cannot survive a motion to dismiss, as Defendants' first briefing makes plain. Instead of addressing Defendants' arguments on the merits, Noland instead elected to untimely request leave to further amend her complaint.

After having had the opportunity to further consider the fatal flaws in her claims under the U.S. copyright and moral rights law, Noland has apparently determined that she should attempt to "hedge her bets" by asserting parallel claims under German law. In addition to failing for the same reasons that her U.S. law claims fail—*i.e.*, that the artwork at issue is not entitled to copyright protection and was not unauthorizedly reproduced by Defendants—these new claims are subject to dismissal pursuant to the principle of territoriality, or in the alternative, *forum non conveniens*, because the SAC makes clear that all of the complained-of actions occurred *outside the United States*. Given her failure to properly plead viable causes of action even after a *third* bite at the apple, the SAC must be dismissed in its entirety, with prejudice.

---

[1] The Second Amended Complaint (defined *supra*) and filed in this action on 2018-05-29 (ECF No. 71) is annexed as **Ex. A** to the accompanying Declaration of Megan E. Noh, dated 2018-July-06 (the "Noh Decl.").

**FACTUAL BACKGROUND**

**I.      The Creation and First Sale of the Work**

*Log Cabin* (the "Work") is a structure "made predominantly of wood and wooden logs," "assembled to look … like the façade of a simple log cabin." (SAC ¶¶ 4-5.) Plaintiff states that the Work was created "in or around 1990." (*Id.* ¶ 4). However, she also references a "report" that was "issued" by an "art conservator" "in or around December 2010." (*Id.* ¶ 37).[2] The Report indicates that the exact date of production of the Work was 1990-June-04. (Report at 1.)

The main structure comprising the Work was produced by a commercial log cabin manufacturer, MasterLog Homes, Inc., in Montana (*id.*; *see also* SAC ¶ 5), and shipped to a gallery in Germany, where it was exhibited and sold in 1990. (*See* SAC ¶ 25.)

**II.     The Work's Deterioration and Subsequent Restoration**

After purchasing the Work, Schürmann loaned it to a German museum, where it was displayed outdoors with Noland's permission. (*Id.* ¶¶ 26, 28.) Over the course of the loan period, the Work suffered "deterioration due to the inherent nature of its wooden components" as well as the "long-term effects" of "weather and seasonal changes." (*Id.* ¶ 33.) This deterioration occurred while the Work was displayed on the museum's grounds ***in Germany***. (*Id.* ¶ 30.)

Following the issuance of the Report, which documented the original construction of the Work's wooden components (*see id.* ¶ 36, Report at 2-3, 6-8, 10), Schürmann and KOW proceeded with a restoration plan proposed by the conservator. (SAC ¶ 38.) The original manufacturer of the Work fabricated new wooden components and sent them to KOW in Berlin. (*Id.* ¶ 11). There, they were combined with the Work's original sub-structure (*see* Report at 2 (referencing "fixing rod

---

[2] Although Plaintiff failed to attach that report, authored by Art-Documentation-Conservation and dated 2010-December-28, it should be deemed to be part of her pleading and is attached to the Noh Decl. as **Ex. B** (the "Report").

construction with base plate and top plate")) and its other "integral" original components (SAC ¶ 5). The assembly of the restored Work, which Noland wrongly characterizes as an unauthorized reproduction, thus occurred *in Germany*.

### III.    The Display, Marketing and/or Resale of the Work

Noland alleges that Schürmann, KOW, and/or the Galerie "publicly exhibited and displayed" the Work at KOW and/or the Galerie's premises in violation of her rights. (SAC ¶¶ 45-53.) Plaintiff concedes that KOW and the Galerie are located in Berlin (*id.* ¶ 9, 11) and thus admits on the face of her SAC that these alleged infringements took place *in Germany*.

Noland further alleges that by entering into an agreement for the sale of the restored Work, including by engaging in unspecified "marketing" efforts in connection with the sale, that the Galerie somehow violated her copyright. (*Id.* ¶¶ 54-59.) Janssen, on behalf of and from the Galerie, negotiated the rescinded sales transaction *in Germany* (*id.* ¶ 9; *see also* ¶¶ 66-67), and the Work remained *in Germany* during the negotiation, agreement and subsequent rescission.[3]

### IV.    Denial of Copyright Protection for the Work

Noland admits that she applied for copyright registration for the Work, that the Copyright Office refused her application, and submitted for reconsideration of such denial. (SAC ¶ 8.)[4]

### V.    Noland's History of Attempts to Interfere with Purchasers' Rights

Upon learning of the restoration of the Work's façade, Noland authored a facsimile transmission, dated 2014-July-18, objecting to the repair of the Work without her consultation.[5]

---

[3] This Court may take judicial notice of that fact, pursuant to the published decision of U.S. District Judge Buchwald. *See Mueller v. Janssen*, 225 F. Supp. 3d 201, 203 (S.D.N.Y. 2016) (noting that the Work was "installed in Germany" at the time of the sale and rescinded prior to delivery).

[4] *See* Noh Decl. **Ex. C** (United States Copyright Office's letter affirming refusal to register the Work, dated 2017-Sept.-12), **Ex. D** (Noland's second request for reconsideration, dated 2017-Dec.-08).

[5] Although Plaintiff failed to attach that document, it should be deemed to be included in her pleading (*see* note 2, *supra*), and as such it is attached to the Noh Declaration as **Ex. E** (the "Fax").

Notably, in the Fax, Plaintiff does *not* explicitly disclaim the Work; rather, she instructs that the conservator's name should be disclosed to future purchasers.[6]

Noland's prior efforts to use claimed "artistic rights" to interfere with the actual rights of purchasers of her artworks are well-documented.[7] While the United States has enacted laws that foster creativity and protect artists' rights to prevent unauthorized reproduction, destruction, and distortion or mutilation that is damaging to an artist's reputation, Noland has a track record of attempting to use those rights to impermissibly exert control over works she previously sold. This case, sadly, is no different. Noland's baseless complaint undermines the claims of artists who need to rely on these laws when there has been real damage to the rights and artworks they protect.

## ARGUMENT

On a motion to dismiss under FED. R. CIV. P. 12(b)(6), the Court is to "accept as true all facts alleged in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007). However, "formulaic recitation of the elements of a cause of action" will not suffice. *Id.* at 555. Moreover, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions" will not protect a complaint from dismissal, *Gebhardt v. Allspect, Inc.*, 96 F. Supp. 2d 331, 333 (S.D.N.Y. 2000) (citations omitted).

---

[6] Noland's claim that Schürmann and/or KOW created a "copy" of the Work is thus both new and contradicted by her prior assertions. She has known about the restoration of the Work since 2014, and previously instructed that "[f]rom now on, the provenance <u>must</u> <u>include</u> the fact that the piece was 'repaired' by a conservator <u>but</u> <u>the</u> <u>artist</u> <u>wasn't</u> <u>consulted</u>…. The [W]ork needs to be depreciated in value because of the 'repair' that hadn't been overseen or agreed to …" (Fax at 1 (emphasis in original).) Noland's own prior references to "the piece" and "the [W]ork" tacitly concede that, following the restoration, the original Work existed in what she believed to be an improperly altered form—but that no new copy of the Work had been made.

[7] *See, e.g.*, *Marc Jancou Fine Art Ltd. v. Sotheby's, Inc.*, 107 A.D.3d 637 (N.Y. App. Div. 2013) (dismissing complaint against auction house arising from its withdrawal from auction of silkscreen print by Noland that she alleged had been restored in violation of her rights under VARA after the work suffered minor damage to its corners); Cait Munro, *Is Cady Noland More Difficult to Work with than Richard Prince?*, ARTNET, 2014-November-10, *available at* https://news.artnet.com/art-world/is-cady-noland-as-psychotic-as-richard-prince-162310 (noting Plaintiff's "refus[al] to endorse" for a show including her works at the Brant Art Study Center, as well as other "fall-outs with gallerists and patrons," "refusal to approve" a book including an interview with her, and claims that her works have been "incorrectly installed and combined with works that engender the wrong kind of dialogues").

I.     **NONE OF THE DEFENDANTS INFRINGED ANY COPYRIGHTS IN THE WORK.**

    A.     **Noland's Infringement Claims Fail under U.S. Law.**

        1.     *The Principle of Copyright Territoriality Bars the Application of U.S. Law.*

As a threshold matter, Noland seeks relief under the U.S. Copyright Act, 17 U.S.C. § 101 *et seq* (the "Copyright Act"), for unauthorized reproduction of the Work and for its post-restoration exhibition, display, and marketing, ***all of which occurred in Germany***. (*See* SAC ¶¶ 46, 51, 59, 67.) It is, however, "well established that copyright laws generally do not have extraterritorial application." *Update Art, Inc. v. Modiin Pub., Ltd.*, 843 F.2d 67, 73 (2d Cir. 1988). Noland's failure to identify any domestic conduct or "predicate act" bars her claim at the outset. *Id.* ("the geographic location of the illegal reproduction is crucial"); *Shaw v. Rizzoli Int'l Pub., Inc.*, No. 96 CIV. 4259 JGK, 1999 WL 160084, at *3 (S.D.N.Y. Mar. 23, 1999) (granting defendants summary judgment as to alleged infringements in Italy because "[f]or a United States court to assert jurisdiction over alleged infringements of United States copyright laws abroad, there must be a predicate act in the United States."); *Ahbez v. Edwin H. Morris & Co.*, 548 F. Supp. 664, 667 (S.D.N.Y. 1982) ("at a minimum, an act of infringement within the United States is required to hold the defendant accountable for related infringing acts occurring outside this country.").

        2.     *Noland Fails to Plead the Existence of a Copy; the SAC*
                  *Makes Plain that Defendants Did Not Make a Copy of the Work.*

Even if Noland's claims were not barred by the extraterritorial nature of the alleged infringement here, the SAC cannot withstand a motion to dismiss on the merits under the Copyright Act because Noland has failed to make any showing that the Defendants created a copy of the protected work. *Mazer v. Stein*, 347 U.S. 201, 218 (1954) ("Absent copying there can be no infringement of copyright."); *see also Horizon Comics Prods., Inc. v. Marvel Entm't, LLC*, 246 F. Supp. 3d 937, 940 (S.D.N.Y. 2017) (Oetken, J.) ("In order to establish a claim of copyright

infringement, a plaintiff with a valid copyright must demonstrate that … the defendant has actually copied the plaintiff's work.") (citations omitted).

Here, Noland's entire infringement claim rests on the assertion that Schürmann and/or KOW directed a conservator to fabricate an unauthorized **second copy** of the Work. (SAC ¶¶ 43-44 (alleging the "making [of] an unauthorized reproduction of the Work").) Even assuming *arguendo* that U.S. law applies to the complained-of extraterritorial conduct, the facts asserted by Noland explicitly contradict her conclusory claim that any copy of the Work was created at all. Instead, the SAC alleges only that certain "damaged wooden components" of the Work were "replaced." (SAC ¶ 38.) Defendants do not dispute the restoration of the façade element of the Work. However, **no freestanding copy or reproduction was created** by that restoration.

Noland's allegations that the replacement of wooden components effected the "making [of] a reproduction" (*id.*) are exactly the types of "[c]onclusory allegations or legal conclusions masquerading as factual conclusions" that do *not* survive dismissal. *Gebhardt*, 96 F. Supp. 2d at 333. Such claims also defy logic and the facts as Noland herself has alleged them in the SAC. With Schürmann and/or KOW's consent, the conservator carefully replaced the logs comprising the façade element by **affixing new logs to the original underlying structure** of the Work, leaving the other elements intact and unaltered. (*See* Report at 2.) Despite undergoing restoration, the Work always was and always continued to be the Work—not any duplicate copy. *Blazon, Inc. v. DeLuxe Game Corp.*, 268 F. Supp. 416, 420 (S.D.N.Y. 1965) (denying injunctive relief and finding that repainting of plaintiff's copyrighted three-dimensional hobby horse was not "copying," since allegedly-infringing work *was the protected work itself*).

"[T]he plain text of the Copyright Act makes clear that reproduction occurs when a copyrighted work is fixed in a new *material object*." *Capitol Records, LLC v. ReDigi Inc.*, 934 F. Supp. 2d 640, 648 (S.D.N.Y. 2013) (emphasis in original) (transfer of digital music file over

internet effected new copy of file at destination location of end-user's hard disk). No such copying occurred here, as certain original and integral components of the Work always remained fixed to its original structure, and the replaced wooden logs were also fixed to that integral structure. Plaintiff's stretched reading of "copying" would require this Court to find that a reproduction has occurred when the owner of a home embodying a copyrighted design replaces its damaged siding, or a restorer touches up paint on a canvas that requires conservation.

Such an extension of the concept of reproduction is nonsensical—repairs and modifications by an owner to the physical embodiment of a copyrighted work *per se* do not create a copy of the protected work. *Lantern Press, Inc. v. Amer. Publishers Co.*, 419 F. Supp. 1267, 1271 (E.D.N.Y. 1976) (hardcover rebinding of purchased paperbacks did not violate copyright, as "the copyright [i]s not identical with the copyrighted work but exist[s] separately from it"). Noland has thus failed to meet even her preliminary burden of pleading the element of "copying" that is essential to sustain a claim for violation of the corresponding right under Section 106 of the Copyright Act—as well as to sustain claims for any related uses of the alleged copy.[8]

### 3. *Even Had Defendants Copied the Work, It Is Not Protectable Under the Copyright Act, As It Lacks Sufficient Originality.*

Noland concedes, as she must, that the Copyright Office denied her registration for copyright in the Work entirely. (SAC ¶ 8; Noh Decl. **Ex. C**.) While a District Court has "discretion to make an independent determination in an infringement action as to whether a work is

---

[8] Since the restored Work is not an unauthorized "copy" of itself, then the public exhibition and display (Counts IV and V) cannot constitute infringement as a matter of law. 17 U.S.C. § 109(c). Similarly, the marketing and/or attempted sale (Count VI) of the restored Work also cannot constitute infringement as a matter of law, as marketing and sale is not infringing conduct distinct from distribution or display. *See* 17 U.S.C. § 106. Noland also fails to "provide sufficient specificity to properly plead copyright infringement" resulting from those alleged actions, as she "fails to identify [the] specific instances" of unauthorized display (*e.g.*, by date) and/or marketing (*e.g.* by media, date of alleged distribution, and/or alleged recipient(s)) of which she complains. *Lopez v. BigCommerce, Inc.*, No. 16-CV-8970 (Oetken, J.), No. 16-CV-8970 (JPO), 2017 WL 3278932, at *4 (S.D.N.Y. Aug. 1, 2017) (dismissing copyright claims premised on website display of copyrighted images where plaintiff failed to identify specific URLs or locations where infringing material was found).

copyrightable," *DBC of New York, Inc. v. Merit Diamond Corp.*, 768 F. Supp. 414, 416 (S.D.N.Y. 1991), the Copyright Office's refusal to register a work is certainly instructive. Moreover, whether a work "contains copyrightable material is an issue of law." *Branch v. Ogilvy & Mather, Inc.*, No. 89-CV-2440 (LLS), 1990 WL 74540, at *7 (S.D.N.Y. May 30, 1990).

Copyright registration is routinely denied where a work lacks even a "modicum" of originality, and federal courts have also repeatedly denied protection on this basis. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 346-47 (1991) (telephone directories ineligible for copyright protection); *see also, e.g.*, *Past Pluto Prods. Corp. v. Dana*, 627 F. Supp. 1435, 1441 (S.D.N.Y. 1986) (dismissing infringement claim of foam Statue of Liberty hat finding, "[a]lthough an ordinary mass-produced item may be entitled to copyright protection, such an item, in order to be protected, must nonetheless be original") (citation omitted). Items sought to be registered as works of visual art in particular must "embody some creative authorship in [their] delineation[s] or form[s]." *Gardenia Flowers, Inc. v. Joseph Markovits, Inc.*, 280 F. Supp. 776, 781 (S.D.N.Y. 1968) (quoting 37 C.F.R. § 202.10) (copyrights in artificial corsages void for lack of originality).

Noland's ***concept***—that of selling a generic, manufactured utilitarian object as a unique work of fine art—is a provocative take on the "readymade" concept previously explored by artist Marcel Duchamp, echoed more recently by Minimalist artist Dan Flavin's commercial fluorescent lightbulb works. The Work also resonates in the context of American politics, raising questions about nationalism, territorialism, and land settlement. That the Work's concept is deserving of art historical analysis is unquestionable, and it has accordingly commanded substantial market prices from discerning collectors who are intrigued by Plaintiff's artistic commentary. However, "it is axiomatic that copyright protection is given only to the ***particular expression*** of an idea, and never to the idea itself." *Past Pluto*, 627 F. Supp. at 1441 (emphasis added); *see also Nobile v. Watts*, No. 17-CV-597 (KBF), 2017 WL 4679464, at *4 (S.D.N.Y. Oct. 16, 2017); 17 U.S.C. § 102(b).

As important as Noland's concept and commentary may be, the Copyright Office explicitly excludes a work's "creative intent or intended meaning" from consideration on review of an application for registration. COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES § 310.5 (3rd ed. 2017). Artistic and monetary value thus do not militate a finding of its copyrightability. In fact, this *particular physical expression* of Noland's ideas lacks sufficient originality to merit copyright protection. Noland used a commercial log cabin manufacturer to produce a portion of a classic log cabin, using standard materials, in the "simple" form that log cabins have taken since they were first constructed in Eastern Europe and Scandinavia during the Bronze Age.

The Second Circuit has held that "the usual copyright doctrine[s] of merger, public domain, and scenes-à-faire" apply to structures. *Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 104-05 (2d Cir. 2014). One case addressing an architectural work effectively illustrates the level of originality to which the Work would need to rise to be entitled to copyright protection:

> No color is copyrightable, but the arrangement of colors on a canvas is. Likewise, doors and walls are not copyrightable, but their arrangement in a building is. **Some architectural designs, like that of a single-room *log cabin*, will consist solely of standard features arranged in standard ways**; others, like the Guggenheim [Museum], will include standard features, but also present something entirely new.

*Id.* at 103-04 (emphasis added) (further noting that "[e]lements taken from" architectural scenes-à-faire "should get no protection").

Noland's addition of two American flags[9] to the ordinary log cabin façade does not change the result. Although the standard for originality is low, protection should not be "extend[ed] to

---

[9] Of course, the American flag is in the public domain as it is a work of the U.S. government. 17 U.S.C. § 105. As such, it is not considered for determining whether the Work contains the requisite originality for copyright protection. *See, e.g.*, *Boisson v. Banian, Ltd*, 273 F.3d 262, 268 (2d Cir. 2001); *see also Horizon Comics Prods., Inc.*, 246 F. Supp. 3d at 941-43 (finding as a matter of law that specific elements of allegedly-infringed work were unprotectable); *Earth Flag Ltd. v. Alamo Flag Co.*, 153 F. Supp. 2d 349, 352-54 (S.D.N.Y. 2001) ("In a suit for copyright infringement, a plaintiff must establish that … the defendants copied *original constituent elements* of the work" and

minuscule variations" on works from the public domain. *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 908-10 (2d Cir. 1980) (citations omitted); *see also L. Batlin & Son., Inc. v. Snyder*, 536 F.2d 486, 490-91 (2d Cir. 1976) (affirming cancellation of copyright in plastic bank, because it displayed "merely 'trivial' variation[s]" from cast iron bank in public domain) (citations omitted).[10] Indeed, were placing two American flags on a traditional log cabin façade enough to warrant copyright protection, then any log cabin owner who affixes a similar patriotic symbol to the front of their home might be considered an infringer via the creation of an unauthorized derivative work. *L. Batlin & Son, Inc.*, 536 F.2d at 492 (granting copyright protection for minuscule alterations would incentivize "appropriating and monopolizing public domain work").[11]

Here, the Copyright Office has, in its second refusal to register the Work, characterized its design as "not only unoriginal, [but] practically inevitable" (Noh Decl. **Ex. C** at 3 (citing *Feist*, 499 U.S. at 363)), as it is meant to look like a "classic" log cabin. Neither does the Work combine various singularly-unprotectable elements from other architectural inspirations into a sufficiently original whole; instead, its composition consists "solely [of] … standard features arranged in [the] standard way," and it is thus ineligible for copyright protection. *Zalewski*, 754 F.3d at 103.

---

finding that disputed flag "ha[d] no non-trivial, original component that entitle[d] it to copyright protection" but rather simply reprinted public domain photograph) (citing *Feist*, 499 U.S. at 361) (emphasis added).

[10] Other creative works modeled after age-old utilitarian forms have also been denied protection where the author's expression of the idea of the form fails to display creativity. *See, e.g., Towle Mfg. Co. v. Godinger Silver Art Co., Ltd.*, 612 F. Supp. 986, 991-92 (S.D.N.Y. 1985) (defendant's pressed-glass baby bottle did not infringe plaintiff's cut-crystal baby bottle since the latter "failed to meet even the modicum of originality necessary for copyrightability" in employing cutting techniques already in "common usage," and because plaintiff "cannot [] claim … protection for the idea of a decorative baby bottle"). Because Noland has not alleged and "cannot show more than the aggregation of well-known components to comprise an unoriginal whole," the resulting Work should be seen as "falling short of the easy standard of originality required for a copyright." *Florabelle Flowers, Inc. v. Joseph Markovits, Inc.*, 296 F. Supp. 304, 307 (S.D.N.Y. 1968) (denying plaintiff's request for injunctive relief because, *inter alia*, "there is a strong likelihood that plaintiff cannot show more than the aggregation of well known components to comprise an unoriginal whole—the result falling short of the easy standard of originality required for a copyright.").

[11] Such an incentive, of course, flies in the face of "promot[ing] the Progress of … [the] Arts." U.S. Const. Art. I § 8, cl. 8. Noland should not be permitted to control access to public domain designs because she created the Work.

10

In short, despite attempting three times to adequately plead a claim of copyright infringement under the Copyright Act, Noland's claims are still subject to dismissal—the allegedly infringing conduct occurred outside of the United States, Defendants did not copy the Work, and even assuming that they did, the Work lacks the requisite originality required for copyright protection under United States law. Noland's claims fail under U.S. copyright law.

**B.    Noland's Infringement Claims Also Fail Under German Law.**

**1.    *The Work Does Not Qualify for Protection Under German Law.***

The Work fails to meet the minimum threshold of originality that has been developed under German case law, as (i) Noland's creative choices were limited to selection from a limited number of technical design options in its construction, (ii) she would not be deemed the "author" of the technical drawing (which she did not execute) nor the façade (which she did not fabricate nor assemble), and (iii), the addition of an American flag to the façade is too minimal of an additional creative choice to qualify the Work for protection. (Braeuer Stat. ¶¶ 6-18.)

**2.    *Defendants Did Not Infringe the Work Under German Law.***

Even assuming *arguendo* that the Work would qualify for protection under German law, its conservation as alleged is not considered "reproduction" thereunder. ( *Id.* ¶¶ 19-22.) Moreover, any alleged reproduction of the Work should not be considered "unauthorized" under German law, as Noland's original sale of the Work *included the technical blueprint* for its construction, which in combination with the Work's conceptual nature, would be deemed to have constituted an implied license for the purchaser to re-fabricate the structure if and as necessary. (*Id.* ¶¶ 31-34.)

The complained-of restoration of the Work would be considered permissible under German law, as the Work had deteriorated but had not been completely destroyed, and the conservation was "true to the work's original condition." (*Id.* ¶¶ 23-24.) As with U.S. law, German copyright

law accordingly fails to provide an avenue of redress for the alleged actions that Noland characterizes as "infringement," and those claims should be dismissed as a matter of German law.

### 3.     *Noland's Claims are Time-Barred Under German Law.*

The relevant German statute of limitations is three years, running from the end of the calendar year in which the claimant has obtained knowledge of the circumstances giving rise to the claim and of the identity of the infringer or would have obtained such knowledge if the claimant had not shown gross negligence. (Braeuer Stat.[12] ¶ 38.) Noland was advised of the complained-of conduct no later than 2014-July-18, and the German statute of limitations for Noland's copyright claims accordingly expired on 2017-December-31. (*Id.* ¶ 41.) Noland, however, did not assert claims under German law until 2018-May-29. (*Id.*; *see also* SAC ¶ 15.) Her failure to explain the prejudicial delay in noticing Defendants of her German-law claims should deprive her of the ability to benefit from the German corollary to the "relation-back" doctrine. (Braeuer Stat. ¶ 42.)

### C.     In the Absence of Legitimate Copyrights, Noland's Claims of Vicarious and/or Contributory Infringement (Counts VI-VIII) Must Also be Dismissed.

Under both U.S. and German law, claims for vicarious and/or contributory infringement fail in the absence of direct infringement. *Williams v. A & E Television Networks*, 122 F. Supp. 3d 157, 165 (S.D.N.Y. 2015) (dismissing contributory and vicarious infringement claims where direct infringement "not plausibly alleged"); *Faulkner v. Nat'l Geographic Enterprises Inc.*, 409 F.3d 26, 40 (2d Cir. 2005) ("there can be no contributory infringement absent actual infringement"). (*See also* Braeuer Stat. ¶ 27.) Noland's allegations regarding "copying" the Work's façade, even assuming them to be true, do not support a claim for direct infringement—there was and is no

---

[12] Pursuant to FED. R. CIV. P. 44.1, Defendants proffer the statement of German attorney Jakob Braeuer, dated 2018-July-06 (the "Braeuer Stat.") with regard to application of German law to Noland's eleventh-hour claims thereunder.

duplicate Work, and even if the restored Work could be considered a copy, it did not infringe any copyright in its pre-restoration incarnation, which was unprotectible.

Even were this Court to somehow find direct infringement of the Work, Noland does not sufficiently allege the requisite elements of either contributory or vicarious infringement.[13] A claim for contributory infringement must "allege[] … actual or constructive knowledge of, and participat[ion] in, [the directly] infringing conduct," and "authorization or assistance" that "bear[s] a direct relationship to the infringing acts…." *Marvullo*, 105 F. Supp. 2d at 229-30.[14] Here, Noland's contributory infringement claim fails as a matter of law. She neither alleges knowledge (*see Wolk v. Kodak Imaging Network, Inc.*, 840 F. Supp. 2d 724, 750-51 (S.D.N.Y. 2012) (dismissing contributory infringement claim where plaintiff failed to "demonstrate[] [that defendant] … acted with knowledge")), nor that either gallery defendant was controlled by the other or by the other's principal. *Premier Fabrics, Inc. v. Woodland Trading Inc.*, 42 F. Supp. 3d 549, 555-56 (S.D.N.Y. 2014) (contributory infringement claim failed where complaint "ma[de] no allegations of [defendant]'s knowledge or the scope of its control, if any, over the allegedly infringing activity" and "fail[ed] to allege that [defendant] knowingly induced or encouraged direct infringement, or enjoyed a right to stop or limit the infringing activity").

"To establish vicarious liability, [a] plaintiff must show that the defendant had the (1) right and ability to supervise [that] coalesced with (2) an obvious and direct financial interest in (3) the

---

[13] Nor have her vague and sweeping allegations met the minimal specificity standard applicable under FED. R. CIV. P. 8(a)(2) which "has been construed to require a plaintiff to plead with specificity the acts by which a defendant has committed … infringement." *Marvullo v. Gruner & Jahr*, 105 F. Supp. 2d 225, 230 (S.D.N.Y. 2000) (allegations too "broad [and] sweeping" to satisfy specificity requirement). It is unclear from Noland's loosely-sketched claims who is alleged to be the direct infringer and who a contributory or vicarious infringer, with respect to which activity(ies). Rather, Noland vaguely alleges, "[t]he actions of Defendants Schürmann, KOW Gallery *and/or* [the Galerie], acting **alone *or* together** with each other, constituted **direct *or* contributory** infringement" and that "[a]t *some point*" the Galerie was contacted to assist in marketing the Work (SAC ¶¶ 63, 65 (emphasis added).)

[14] In *Marvullo*, the Court denied leave to amend to add a contributory infringement claim where the plaintiff failed to plead knowledge or causation of, or material contribution to, infringing conduct, noting that "[f]ailure to plead these essential elements would warrant dismissal" even had direct infringement been adequately pleaded. *Id.*

13

exploitation of copyrighted materials." *Berry v. Deutsche Bank Tr. Co. Americas*, No. 07-CV-7634 (WHP), 2008 WL 4694968, at *5 (S.D.N.Y. Oct. 21, 2008) (citations omitted). Noland's wholly conclusory allegation that one Defendant had a "financial interest" in the allegedly-infringing conduct (SAC ¶ 66) is refuted by the other facts she pleads, specifically, that the sale of the Work after conservation was rescinded and thus ultimately not profitable for any of the Defendants. (*See* SAC ¶ 58.) Although the "financial benefit need not be tied directly to sales of the [allegedly] infringing goods," Noland has failed to allege even the necessary "causal relationship between the [disputed] activity and any financial benefit the defendant reap[ed]." *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 358 (S.D.N.Y. 2014) (citations omitted). Indeed, Plaintiff has not adequately pleaded that *any* financial benefit was actually reaped, knowing such an allegation would be plainly false. Accordingly, Noland's contributory and vicarious copyright claims are also subject to dismissal.

II.   **NOLAND IS NOT ENTITLED TO A DECLARATORY JUDGMENT THAT HER MORAL RIGHTS HAVE BEEN VIOLATED.[15]**

   A.   **The Work Is Not Entitled to U.S. Moral Rights Protection.**

      1.   *The Work Predates VARA.*

The Visual Artists Rights Act, 17 U.S.C. § 106A ("VARA"), was enacted on 1990-December-01, and applies to works of visual art "created on or after June 1, **1991**," *Carter v. Helmsley-Spear, Inc.*, 71 F.3d 77, 83 (2d Cir. 1995) (emphasis added), or to works created earlier but for which "title has not, as of such effective date, been transferred from the author." 17 U.S.C. § 106A(d)(2). The SAC states that the Work was created "in or around 1990" (SAC ¶ 4) and "first exhibited in 1990." (*Id.* ¶ 25.) She has also previously admitted that Schurmann purchased the

---

[15] For the reasons discussed *supra* in Part I, Noland is also not entitled to a declaratory judgment of ownership to a copyright in the Work or that any rights under U.S. or German copyright law have been violated.

work in 1990. (Noland Mem. in Oppn. to Defs.' Mot. to Dismiss, filed 2018-April-02 (ECF No. 53), a true and correct copy of which is attached to the Noh Declaration as **Exhibit F** at 7.) Even affording Noland every favorable inference, she does not state a claim for protection under VARA; she acknowledges that the Work was created and exhibited prior to the statute's effective date, and that title to it was transferred prior to that date.

### 2.      Even Had it Been Created After VARA's Enactment, the Work Is Not a Protectable Work of Visual Art under VARA.

VARA applies to a narrow category of works of visual art enumerated by the Copyright Act comprised of "painting[s], drawing[s], print[s], or sculpture[s], existing in a single copy" or in limited editions or within permitted castings. 17 U.S.C. §§ 101, 106A(a). Notably, "any work not subject to copyright protection" is correspondingly *not eligible for VARA protection*. *Id.* § 101. In *Kelley v. Chicago Park Dist.*, 635 F.3d 290, 299 (7th Cir. 2011), the Seventh Circuit acknowledged that "to qualify for moral rights under VARA, a work must first satisfy basic copyright standards …." The *Kelley* court further noted that "only a select few categories of art get the extra protection provided by the moral rights concept." *Id.* (finding wildflower park installation insufficiently fixed/stable or the product of human authorship to qualify for copyright). As discussed *supra* in Part I.A.3., the Work is insufficiently original to qualify for copyright protection generally, and thus is also inherently ineligible for the "extra protection" of VARA's moral rights provisions.

### 3.      Noland Fails to Adequately Plead Distortion, Mutilation, Destruction, or Other Modification Under VARA.

Noland's conclusory allegations (*see* SAC ¶¶ 34, 41, 80g) do not state a claim under VARA either for (a) "intentional distortion, mutilation, or other modification" or (b) "intentional or grossly negligent destruction" of the Work. 17 U.S.C. § 106A(a)(3)(A)-(B).

Without exception, modifications that are the result of the passage of time or the inherent nature of the materials used in a work of visual art are excluded from the scope of actionable conduct under VARA. 17 U.S.C. § 106A(c)(1); *see also Flack v. Friends of Queen Catherine Inc.*, 139 F. Supp. 2d 526, 534 (S.D.N.Y. 2001) ("VARA does not provide a means of … obtaining damages due to modifications resulting from 'the passage of time or the inherent nature of the materials.' … This is true even if the modification is caused by gross negligence."). Here, Noland explicitly acknowledges that the original wooden components of the Work deteriorated "due to the inherent nature of" the wood, the direct contact of the components with the ground, and the "long-term effects" of "weather and seasonal changes" over the course of a decade. (SAC ¶ 75.) Given Noland's concession that any damage to the Work resulted from statutorily-exempted factors, her modification claim must fail in this regard.

Modification resulting from conservation is also exempt from action under VARA, except in the event of gross negligence. 17 U.S.C. § 106A(c)(2). In *Flack*, this Court held that the work of a second sculptor who was "hired only to repair—not modify" an original clay sculpture "was an effort at conservation," but denied defendants' motion to dismiss the count of the complaint alleging grossly negligent conservation actionable under VARA, since the plaintiff artist alleged that the result of the conservation was "a distorted, mutilated model." 139 F. Supp. 2d at 535. Here, by contrast, Plaintiff's amended pleading is conspicuously devoid of allegations that the conservation of the Work in any way distorted or mutilated its original appearance.

The SAC alleges only in conclusory fashion that the conservation of the Work was "prejudicial to [Noland's] reputation," 17 U.S.C. § 106A(a)(3)(A), but does not specify how any such prejudice has flowed from the restoration. For example, Noland fails to allege that the restoration of the Work resulted in the "present[ation] to viewers [of] an artistic vision materially different from that intended by" her. *Carter v. Helmsley-Spear, Inc.*, 861 F. Supp. 303, 324

16

(S.D.N.Y. 1994) *aff'd in part, vacated in part, rev'd in part on other grounds*, 71 F.3d 77. Nor could she make this allegation in good faith—the Work is not materially different; indeed, the conserved Work looks substantially identical to the Work as it was purchased by Schürmann.

In a transparent attempt to remedy a glaring defect Defendants highlighted in their initial motion to dismiss, Noland added several claims that the Work was "ultimately destroy[ed]" by deterioration and/or conservation. (SAC ¶¶ 14, 31, 34 39-40, 72.) These allegations, however, are also entirely conclusory, as they neglect to specify how the restoration of wooden components constitutes actual "destruction," as distinguished from damage, mutilation or modification. *See Flack*, 139 F. Supp. 2d at 534 (finding that although sculpture was damaged, it was not destroyed); *see also Tobin v. The Rector*, No. 17-CV-2622 (LGS), 2017 WL 5466705, at *6 (S.D.N.Y. Nov. 14, 2017) ("allegations of damage are insufficient to support a claim of destruction").

Noland has also failed to adequately allege the intentionality or severity of negligence required for a claim of destruction; she merely pleads the formulaic language of the claims by rote. (*See* SAC ¶¶ 14, 32-33, 40-41.) As in *Flack*, "the bald and unsupported allegation" that Defendants' "negligent conduct" resulted in violation of Noland's moral rights (SAC ¶ 34) is "insufficient to survive a motion to dismiss, particularly where, as here, the allegedly intentional action … would be contrary to any conceivable interest of [D]efendants," parties with a commercial interest in the sale of the Work. *Flack*, 139 F. Supp. 2d at 534.

### B.     The Work is Not Entitled to German Moral Rights Protection.

Moral rights exist under German law as part of German copyright law. (Braeuer Stat. ¶ 28.) To qualify for moral rights protection thereunder, a work must be eligible for copyright protection generally. (*Id.* ¶ 29.) For the reasons set forth *supra* in Part I.B., the Work does not qualify for copyright protection under German copyright law, and thus is also denied the benefit of that law's

moral rights provisions. (*Id.*) Moreover, even were the Work protected by German copyright, Noland's allegations of negligence would not give rise to a German moral rights claim. (*Id.* ¶ 30.)

## III.   PLAINTIFF'S NEGLIGENCE CLAIM ALSO FAILS.

### A.   There Was No Negligence Under U.S. Law.

#### 1.   *Noland Has Failed To Allege the Requisite Duty of Care.*

A duty of care is "a necessary element in any negligence action," *Mechigian v. Art Capital Corp.*, 612 F. Supp. 1421, 1429 (S.D.N.Y. 1985), and is a question of law that may properly be decided on a motion to dismiss. *Tzaras v. Evergreen Int'l Spot Trading, Inc.*, No 01-CV-10726 (LAP), 2003 WL 470611, at *5 (S.D.N.Y. Feb. 25, 2003). Here, Noland has not alleged that Schürmann owed her a duty of care to perform "regular inspections and maintenance of" the Work (SAC ¶ 32), nor any plausible basis for such a duty, *e.g.*, that Noland conditioned Schürmann's purchase of the Work on the latter's adherence to a specific set of protocols for care of the Work. ***To the contrary***, Noland concedes that the Work was displayed outdoors with her permission (SAC ¶ 26) but implies that Schürmann had an *independent* "obligation to safeguard" it, without specifying any basis whatsoever for this "obligation." (*Id.* ¶ 73.) No such independent duty arises on the part of art purchasers, and Noland's wholly conclusory allegations are insufficient to survive dismissal. *See, e.g.*, *DDR Constr. Servs., Inc. v. Siemens Indus., Inc.*, 770 F. Supp. 2d 627, 662 (S.D.N.Y. 2011) (dismissing negligence claim where complaint was "conclusory regarding the first element of a negligence claim—the duty, if any, owed" by defendant).

Absent a showing that Noland was contractually entitled to have the Work "safeguard[ed]," no independent duty of care arises. *City of Amsterdam v. Daniel Goldreyer, Ltd.*, 882 F. Supp. 1273, 1283 (E.D.N.Y. 1995) (finding conservator owed museum a "duty of care ***under the [parties' r]estoration [a]greement***" because conservator explicitly represented he would use a

particular technique which he did not use in undertaking restoration of museum's painting) (emphasis added). *City of Amsterdam* makes clear that there is no independent standard for negligence with respect to conservation of works of art. Rather, negligence claims in an art conservation context are the same as negligence claims in any other context. *Id.* ("In order to prove negligence in New York, Plaintiff must show that a legal duty existed and was owed by the defendants to the plaintiffs; a breach of that duty occurred; and an injury to the plaintiff was the proximate result of that breach."). Noland has not alleged that she engaged the conservator of the Work, and instead acknowledges that KOW and/or Schürmann did so. (SAC ¶ 36.) Any duty owed by that conservator would accordingly be to those Defendants, who **did** contract for the relevant conservation services.[16]

Noland's negligence claim also fails because the type of claim that Noland seeks to bring, *i.e.*, that conservation undertaken without her permission "violate[s] her honor or reputation" (SAC ¶ 34) as the Work's creator, is **exactly** the type of claim contemplated by VARA, which was designed to provide artists with limited moral rights in the U.S. *See* 17 U.S.C. § 106A(a)(2). Yet, precisely because Noland knows that the Work is **not** protected by VARA (*see* Part II.A., *supra*), she seeks to frame this perceived wrong as "negligence." Such an attempt to make an end-run around the limited scope of the statute should not be permitted by this Court: "A cause of action for breach of moral rights **only** exists under the Visual Artists Rights Act." *Kamanou v. Exec. Sec'y of Comm'n of Econ. Cmty. of W. African States*, No. 10-CV-7286 (GBD) (JLC), 2012 WL 162708, at *7 (S.D.N.Y. Jan. 19, 2012) (emphasis added).

---

[16] Even were the conservator's treatment of the Work to have violated a duty established by that contract, Noland has no standing to plead a breach thereof. *See, e.g.*, *Teevee Toons, Inc. v. Gerhard Schubert GmbH*, No. 00-CV-5189 (RCC), 2006 WL 2463537, at *3 (S.D.N.Y. Aug. 23, 2006) (negligence claim dismissed for lack of standing where plaintiff was a third-party to contract alleged to give rise to defendant's duty); *Davis v. Brown*, No. 12-CV-1906 (SJF) (SIL), 2014 WL 4628666, at *6 (E.D.N.Y. Sept. 15, 2014) (same).

### 2.    Under 17 U.S.C. § 109(a), Schürmann Has
### the Right to Repair—or Even Destroy—His Property.

Noland's allegation of common-law negligence must also be considered in light of other statutory rights granted to the parties. As noted *supra* in Part II.A., VARA protects artists in the event of certain distortions, mutilations, or other modifications to their work, but it does *not* protect the Work at issue in this case because, *inter alia*, the Work's creation predates VARA and Noland has failed to plead distortion, mutilation, or destruction of the Work. By contrast, pursuant to the "First Sale" Doctrine, which has been applied to works of fine art,[17] as the purchaser of the Work acquired directly from Noland (through her agent), Schürmann had the right to modify, re-sell, or even dispose of the Work. 17 U.S.C. § 109(a).

Thus, in the absence of an overriding statutory limitation, the Work was Schürmann's to do with as he pleased. It is well-settled law that the acquirer of a physical copy of a protected work may "continue to use [that copy] until it is worn out, or he may repair it, or improve upon it as he pleases, in the same manner as if it were property of any other kind … the right of repair with respect to a copyrighted [item] sold … may not properly be denied." *Doan v. Am. Book Co.*, 105 F. 772, 777-78 (7th Cir. 1901) (right of repair extended to book company's rebinding of damaged second-hand books "in exact imitation of the original covers," even if such restoration required creation of components "in exact similitude" of the original copyrighted material).[18]

---

[17] *See Walt Disney Prods. v. Basmajian*, 600 F. Supp. 439, 442 (S.D.N.Y. 1984) (display and consignment by defendant of copyrighted animation studio art work gifted to him by animation studio were permitted under "First Sale" doctrine: "where the copyright owner sells … a particular copy of his copyrighted work, he divests himself of the exclusive right in that copy…."); *Estate of Graham v. Sotheby's, Inc.*, 178 F. Supp. 3d 974, 983 (C.D. Cal. 2016) (buyers of fine art "are free to dispose of [such works] as they wish," noting Section 109(a)'s "broad reach," and citing *Quality King Distribs., Inc. v. L'anza Research Int'l, Inc.*, 523 U.S. 135, 152 (1998)).

[18] *See also Harrison v. Maynard, Merrill & Co.*, 61 F. 689, 690-91 (2d Cir. 1894) (defendant purchaser of damaged unbound book sheets did not violate copyright holder's exclusive rights by binding and selling copies from the sheets); *Lantern Press, Inc.*, 419 F. Supp. at 1271 ("by inserting the paperback[ book] in[to] the hard-cover casing, defendant materially improved the book … [but] did not alter or modify or disturb any of the … text. No word was added or subtracted. Defendant sold the very copyrighted work which it had bought with the addition of a hardcover casing.").

While it would certainly be atypical, and perhaps disturbing, for collectors of fine art to intentionally destroy or discard purchased works, the "First Sale" doctrine is meant to protect their right to do as they wish with items they buy.[19] Section 109(a)'s right to modify or dispose of a work of art is limited only by the rights established under relevant artists' rights statutes, *where applicable*—that is, the first-purchaser of a *protected* artwork is free to modify such work as long as (s)he is not grossly negligent and/or prejudicial to the artist's reputation, and to destroy such work if it is not protected by VARA. Because the Work at issue in this case is *not* eligible for moral rights protection, Schürmann's economic and property rights as the owner of the original fixed copy of the Work that Noland willingly placed in the stream of commerce necessarily trump any continued desire by her to control its presentation.

### B.     Nor Was There Negligence Under German Law.

Under German law, there is no independent cause of action for negligence, and this claim fails as a matter of law. (Braeuer Stat. ¶¶ 35-36.)

## IV.     IN THE ALTERNATIVE, NOLAND'S CLAIMS ARE SUBJECT TO DISMISSAL PURSUANT TO THE DOCTRINE OF *FORUM NON CONVENIENS*.

This case is about an artwork fabricated in Montana, shipped to Germany for assembly by a German gallery, purchased from that German gallery by a German collector, and alleged to be subsequently reproduced in Montana and/or Germany before being exhibited and/or marketed in Germany by a different German gallery, and then resold to an Ohio purchaser who rescinded the transaction prior to collecting the Work from Germany.[20] Noland has voluntarily dismissed her

---

[19] An art purchaser's freedom under Section 109(a) can be understood in part as an economic freedom. *See Estate of Graham*, 178 F. Supp. 3d at 983 ("This freedom includes the right to resell the good for whatever price the buyer deems appropriate, without regard to the wishes of the copyright holder.").

[20] *See Mueller*, 225 F. Supp. 3d at 203 (noting purchaser's location in Ohio).

claims against the only U.S.-based individual she had originally sued, former defendant Chris

D'Amelio. (*See* ECF No. 69.) The remaining Defendants are all German individuals or entities.

In short, other than being Noland's place of residence, New York has **no connection** to the

dispute, and dismissal pursuant to a *forum non conveniens* analysis will "best serve the interest of

the parties and the ends of justice." *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 527

(1947). Even were this Court to determine that Noland has properly pleaded a cause of action

under U.S. or German law, the appropriate forum for adjudication of any such remaining dispute

would undoubtedly be Germany.

### A.    Germany is an Adequate Alternative Forum.

Although a Plaintiff's choice of home forum is entitled to deference, it is *not* "assign[ed]

talismanic significance." *Wallert v. Atlan*, 141 F. Supp. 3d 258, 280 (S.D.N.Y. 2015). "A forum is

considered adequate for the purposes of *forum non conveniens* if the defendant is subject to the

jurisdiction of that forum, and the foreign forum provides a remedy for the alleged wrong." *Fagan*

*v. Deutsche Bundesbank*, 438 F. Supp. 2d 376, 382 (S.D.N.Y. 2006) (citing *Piper Aircraft Co. v.*

*Reyno*, 454 U.S. 235, 254 n. 22 (1981) and granting German defendant's motion to dismiss on

grounds of *forum non conveniens* because, *inter alia*, all of the "pertinent conduct" occurred in

Germany and the case bore no relation to the Southern District of New York).

This Court has previously found that Germany is an adequate alternative forum for the

resolution of copyright and negligence claims and can offer "satisfactory redress" with respect

thereto. *Id.*; *see also Stewart v. Adidas A.G.*, No. 96-CV-6670 (DLC), 1997 WL 218431, at *6-7

(S.D.N.Y. Apr. 30, 1997) ("there is no dispute that there are specialized courts in Germany with

responsibility for copyright cases"); *Chirag v. MT Marida Marguerite Schiffahrts*, 604 F. App'x

16, 21 (2d Cir. 2015) (dismissal on *forum non conveniens* grounds not abuse of discretion because,

*inter alia*, "underlying allegations sound in negligence … [a]nd … German courts have been found to be available to adequately adjudicate negligence claims.") (citing cases). Moreover, as Noland has implicitly acknowledged (SAC ¶ 18), both Germany and the U.S. are signatories to the Berne Convention, which, by its terms, is designed to provide an adequate forum for copyright claims to complainants from member states. *See* Berne Convention for the Protection of Literary and Artistic Works, as amended 1979-Sept.-28, S. Treaty Doc. No. 99-27 (1986), Art. 5. Finally, all of the Defendants are amenable to process there and have previously been served there.

**B.    The Public and Private Interest Factors Strongly Favor Adjudication of Noland's Claims in Germany.**

As in *Stewart*, "chief among the public interest factors at play here is the fact that this Court would be required to apply German … law to [Plaintiff's] foreign claims … Furthermore, it is not clear that the German courts would even recognize an American judgment based on German copyright law … mak[ing] it burdensome for this Court to undertake the task of applying German law." 1997 WL 218431, at *7. The rest of the *Stewart* Court's analysis also applies to the circumstances here: New York "has very little interest in adjudicating German law claims" relating to actions that took place in Germany, it would be "unfair to impose the burden of service on a New York jury because of the attenuated contact of New York to the controversy," Defendants' documents relating to the alleged conduct are in Germany "since that is the location from which the [disputed] events were [alleged to have been] supervised," and the witnesses to the alleged reproduction, display, and/or marketing for resale of the Work will "most likely be foreign … thus it will be costly, if even possible, to have them travel to the United States for trial." *Id.* at *7-8.

The *Wallert* Court similarly dismissed plaintiff's foreign-law claims of copyright infringement on *forum non conveniens* grounds because the "vast majority of documentary proof and witnesses will be in [the foreign country]," "securing … witnesses for trial will be far less

23

expensive in [the foreign forum] than in New York," and a trial in New York would "require this Court and a New York jury, to apply the laws of [the foreign jurisdiction] … to resolve a distinctly *non*-localized controversy." 141 F. Supp. 3d at 282 (emphasis in original); *see also Fagan*, 438 F. Supp. 2d at 383 ("evaluation of the private interests at issue militates in favor of litigation in the German courts.…the sources of proof are far more accessible in Germany than in this District.").

## V.   THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE, AS FURTHER AMENDMENT WOULD BE FUTILE.

Noland has failed—despite ***three attempts***—to plead claims on which relief could be granted and has instead repeatedly acknowledged facts that preclude her *ability* to successfully plead cognizable claims. The Court has "broad discretion" in deciding whether to permit amendment, and "should not grant a plaintiff the right to amend when such amendment would be futile," *e.g.*, "when it could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Malester v. Adamo*, No. 09-CV-9347 (GBD), 2010 WL 5065865, at *2, 4-5 (S.D.N.Y. Dec. 8, 2010) (citations omitted); *see also Gordon v. Invisible Children, Inc.*, No. 14-CV-4122 (PGG), 2015 WL 5671919, at *14 (S.D.N.Y. Sept. 24, 2015) (dismissing copyright infringement and VARA claims without leave to re-plead); *Gee v. CBS, Inc.*, 471 F. Supp. 600, 644 (E.D. Pa. 1979) (Plaintiffs not permitted to file third amended complaint following finding that second amended complaint did not meet notice requirements for allegations of copyright infringement) (citing FED. R. CIV. P. 8).

Tellingly, the SAC reflects no new facts giving rise to proper claims, but rather makes a single oblique reference to "recently discovered" information about *Noland's own travels* to "complete" the Work—evidence that necessarily has been in her possession or available to her since she filed her initial complaint. Noland's unexplained and undue delay in filing the instant amended pleading suggests an improper tactical gambit. *See State Trading Corp. of India v. Assuranceforeningen Skuld*, 921 F.2d 409, 418 (2d Cir. 1990) ("it is not unreasonable to impute

lack of good faith" when plaintiff "deliberately chose not to amend its complaint earlier to include causes of action based on foreign law because any admission that foreign law applied … would have increased the chance of dismissal on … *forum non conveniens* grounds"); *Vine v. Beneficial Fin. Co.*, 374 F.2d 627, 636-37 (2d Cir. 1967) (affirming denial of leave to file second amended complaint where "new information … was within plaintiff's knowledge before argument of the motion to dismiss the first amended complaint"). The rules permitting amendment are not properly used to sanction dilatory claims, to thwart the assertion of applicable procedural defenses, or to indefinitely extend statutes of limitations, any of which are prejudicial to the German Defendants' rights. Noland's claims should thus be dismissed without leave to further amend.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully submit that the Court should dismiss the Complaint with prejudice.

Dated: New York, New York
      2018-July-06

CAHILL COSSU NOH & ROBINSON LLP

By:      *s/ Megan E. Noh*
       Megan E. Noh
       John R. Cahill
       Aimée Scala
       70 West 40th Street
       New York, NY 10018
       (212) 719-4400

       *Attorneys for Defendants*
       *Galerie Michael Janssen, Michael*
       *Janssen, Wilhelm Schürmann, and KOW*