UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CADY NOLAND,

                       Plaintiff,

-v-

GALERIE MICHAEL JANSSEN, et al.,

                       Defendants.

17-CV-5452 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff Cady Noland, an artist, initiated this copyright action in connection with the display and attempted sale of what she alleges to have been an unauthorized copy of one of her wooden sculptures. Defendants are two German art galleries, the owner of one of the galleries, and a German art collector. Noland's allegations are largely based on Defendants' replacement of the sculpture's wooden parts after years of outdoor exposure had caused the sculpture to begin to rot. (Dkt. No. 71 ("SAC") ¶¶ 28–34, 38–40.) Before the Court now is Defendants' motion to dismiss the operative Second Amended Complaint. (Dkt. No. 74.) For the reasons that follow, Defendants' motion is granted.

**I.    Background**

Plaintiff Cady Noland is a visual artist. (SAC ¶ 1.) This suit is about Noland's 1990 sculpture called "Log Cabin Façade." (SAC ¶ 4.) The artwork ("the Log Cabin") resembles the front facade of a log cabin in size and structure, with two short side walls for support. (SAC ¶ 5.) The facade's discernible features include a door-shaped opening, two window-shaped openings with American flags hung below them, and a triangular-shaped top. (*Id.*) Noland included the following photograph of the artwork as part of her Second Amended Complaint:



(SAC at 3.)

Noland claims to own a copyright to the Log Cabin. (SAC ¶ 8.) However, when she applied to the Copyright Office for registration of a copyright in the artwork, the Copyright Office denied her application. (*Id.*) Noland has requested reconsideration of the Copyright Office's denial of her registration application, and her request remained pending at the time the Second Amended Complaint was filed. (SAC ¶ 8.)

In 1990, Defendant Wilhelm Schurmann, a German art collector, bought the Log Cabin. (SAC ¶ 11.) Schurmann exhibited the Log Cabin at various locations in Germany, including a ten-year stint at a museum in Aachen, Germany. (SAC ¶¶ 25, 28, 46, 51.) With Noland's permission, the Aachen museum displayed the Log Cabin outdoors. (SAC ¶¶ 26–29.) Prior to displaying the work outdoors, Schurmann obtained Noland's leave to stain the wood a darker

color.  (SAC ¶¶ 26–27.)  Noland alleges that this newly stained artwork constituted a derivative work as defined by Section 101 of the United States Copyright Act.  (SAC ¶¶ 6, 27.)

In displaying the artwork outside, the Aachen museum placed the work directly on the bare ground without a protective foundation, causing some of the wood to rot and deteriorate.  (SAC ¶¶ 30–31, 33.)  After hiring an art conservator in December 2010 to inspect the damage to the artwork, Schurmann and Defendant KOW, a German art gallery, replaced all of the sculpture's original wooden components with new wooden parts.  (SAC ¶¶ 12, 36–40.)[1]

Sometime after the wood was replaced, Schurmann and KOW recruited the Galerie Michael Janssen ("the Janssen Gallery") to help sell the work.  (SAC ¶ 50.)  The Janssen Gallery is also a German art gallery, located in Berlin.  (SAC ¶ 9.)  Defendant Michael Janssen owns the gallery.  (SAC ¶ 10.)  After being engaged by Schurmann and KOW, Janssen subsequently displayed the work at his gallery in Berlin.  (SAC ¶¶ 52, 67.)

Acting on behalf of Schurmann, in July 2014 the Janssen Gallery found an American collector willing to purchase the work for $1.4 million.  (SAC ¶ 55.)  The resulting contract of sale included a New York choice-of-law provision and called for delivery of the sculpture to Ohio, but it also provided that if Noland "refuses to acknowledge or approve of the legitimacy of the Work," or "seeks to disassociate her name from the Work," or "claims that her moral rights, rights under the Visual Artists Rights Act or other similar legislation have been violated," the American buyer could elect to have Janssen buy back the work.[2]  (SAC ¶¶ 56–57.)  After Noland

---

[1] The Second Amended Complaint refers to the sculpture with all new wooden components as the "Log Cabin Copy."  (SAC ¶ 43.)  Without deciding whether the replacement of the wood did create a copy under the law, the Court refers to the work resulting from the wood replacement as the "work," "artwork," or "Log Cabin."

[2] Noland attaches a copy of the contract of sale to her Second Amended Complaint.  (Dkt. No. 71-1.)

3

disavowed the legitimacy of the refurbished Log Cabin, the American buyer elected to have Janssen buy back the artwork. (SAC ¶ 58.) Noland does not allege that the work was ever actually transferred out of Germany to the United States.

Noland claims that the refurbished Log Cabin that Defendants displayed and offered for sale was not her artwork but an unauthorized copy. (*Id.*) She asserts claims against Defendants under the following legal theories: (1) violations of her moral rights under the Visual Artists Rights Act ("VARA"), 17 U.S.C. § 106A, and the German Copyright Act (SAC ¶¶ 24–41); (2) copyright infringement in violation of the U.S. Copyright Act and the German Copyright Act (SAC ¶¶ 42–59), as well as attendant claims of contributory infringement and vicarious liability for infringement (SAC ¶¶ 60–68); and (3) negligence on the part of Schurmann for breach of his duty to maintain the work (SAC ¶¶ 69–78). Noland seeks a declaratory judgment (SAC ¶¶ 79–80), as well as injunctive relief and damages (SAC at 16–18).

## II. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In ruling on a motion to dismiss, a court must "accept as true all factual allegations" in the complaint. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (citation omitted). And while "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678, courts must "draw all inferences in the light most favorable to the non-moving party[]," *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007). In addition to the complaint, courts considering a Rule 12(b)(6) motion may also rely on "documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when

4

bringing suit, or matters of which judicial notice may be taken." *Jovani Fashion, Ltd. v. Cinderella Divine, Inc.*, 808 F. Supp. 2d 542, 545 (S.D.N.Y. 2011).

**III. Discussion**

    **A.**     **Territorial Limitations of the U.S. Copyright Act**

All of the conduct underlying the Copyright Act violations alleged by Noland—including Defendants' "destruction" of her original work, their "copying" of that work by replacing all of its wooden logs, their continued display of the "copied" work, and their efforts at effectuating a sale of the "copied" work—are alleged to have been performed by Defendants exclusively in Germany. Defendants assert, therefore, that Noland cannot properly bring claims in this Court for violations of U.S. copyright law. (Dkt. No. 75 at 5.)

"It is well established that copyright laws generally do not have extraterritorial application." *Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 73 (2d Cir. 1988). There are, however, some exceptions to the territorial limitations on the applicability of the U.S. Copyright Act. Most relevant here is the "predicate act" exception, which provides that "an individual, who commits an act of infringement in the U.S., which permits further reproduction outside of the U.S. . . . is liable for infringement under the U.S. Copyright Act." *Levitin v. Sony Music Entm't*, 101 F. Supp. 3d 376, 384–85 (S.D.N.Y. 2015); *see also* 5 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 17.02 (2018).

Importantly, in order for a "predicate act" to render a foreign infringer "liable for infringement under the U.S. Copyright Act . . . , the copyright infringement plaintiff 'must first demonstrate that the domestic predicate act was itself an act of infringement in violation of the copyright laws.'" *Levitin*, 101 F. Supp. 3d at 385 (quoting *Fun–Damental Too, Ltd. v. Gemmy Indus. Corp.*, No. 96 Civ. 1103, 1996 WL 724734, at *5 (S.D.N.Y. Dec. 17, 1996)). Courts in this Circuit have strictly adhered to this requirement, refusing to apply the U.S. Copyright Act to

5

foreign incidents of infringement even when foreign-made infringing products are based on models obtained and transported from the United States, *see Fun–Damental Too,* 1996 WL 724734, at *5, or when an infringing dance performance is "assembled and arranged" in the United States, *see Robert Stigwood Grp., Ltd. v. O'Reilly*, 530 F.2d 1096, 1100–01 (2d Cir. 1976), because such alleged "predicate acts" did not themselves amount to copyright infringement.

Noland argues that her claims satisfy the "predicate act" exception to the territorial limitation on the applicability of the U.S. Copyright Act. (Dkt. No. 79 at 17.) The Court therefore must determine whether Noland has pleaded a "domestic predicate act [that] was itself an act of infringement in violation of the copyright laws." *Fun–Damental Too*, 1996 WL 724734, at *5. Noland identifies two such possible predicate acts: (1) Defendants' purchasing of wood in the United States for purposes of refurbishing the work; and (2) Defendants' attempted sale of the work to an American buyer pursuant to a contract calling for delivery of the work to the United States. (Dkt. No. 79 at 17–18.) The Court addresses each of these two acts in turn.

First, Noland asserts that Defendants' act of purchasing the wood used to refurbish her artwork from a Montana company constitutes a predicate act sufficient to trigger the applicability of U.S. copyright law. (Dkt. No. 79 at 17.) But buying wood is clearly not an act of copyright infringement; if anything, it was only Defendants' subsequent use of that wood to reconstruct Noland's artwork that could qualify as "an act of infringement in violation of the copyright laws." *Fun–Damental Too*, 1996 WL 724734 at *5. Defendants' purchase of wood from the United States is thus like the dance arrangements and shipment of a model that were rejected as predicate acts in prior cases. *See id.*; *see O'Reilly*, 530 F.2d at 1100–01. Because the act of

6

purchasing wood from Montana also did not by "itself violate[] the Copyright Act, there is no cause of action under the U.S. Copyright Act for foreign copyright infringement" on this basis. *Levitin*, 101 F. Supp. 3d at 385 (internal quotation marks and citation omitted).

Second, Noland argues that Defendants' failed attempts to sell the artwork to a U.S. buyer might also satisfy the exception, because "[i]nternational actions that potentially result in the distribution of works in the U.S. are also predicate acts of infringement." (Dkt. No. 75 at 17.) But neither of the two cases cited by Noland in support of her theory requires adopting her broad view of the "predicate act" rule, and their facts are only marginally similar to the case at hand. In the first, an unpublished out-of-Circuit case, a Canadian toy company was held liable for copyright infringement under U.S. law on the basis of the Canadian company's "significant activity in the United States," including its actual shipment of infringing products into the United States. *See Liberty Toy Co., Inc. v. Fred Silber Co.*, 149 F.3d 1183 (Table), 1998 WL 385469, at *3–4 (6th Cir. June 29, 1998). Here, Noland does not allege *any*—let alone any *significant*—activities by Defendants within the United States, nor she does allege that Defendants actually delivered any infringing work to the United States. (SAC ¶¶ 55, 58.)

In the second case on which Noland relies, the Second Circuit upheld the application of U.S. copyright law to a foreign entity on the basis of evidence showing that a specific act of infringement, namely the "illegal reproduction of the [copyrighted work, first] occurred in the United States and then was exported abroad." *Update Art, Inc.*, 843 F.2d at 73. Unlike in *Update Art*, however, here Noland does not allege any domestic act of infringement, because she does not allege that an infringing work was ever "reproduce[d]," "display[ed]," or "distribute[d]" in the United States. 17 U.S.C. § 106. Moreover, because *Update Art*'s holding was premised on the conclusion that there was in fact a domestic act of infringement, it in no way supports her

broad assertion that an infringement that occurs abroad that could *potentially* lead to a domestic distribution of an infringing work may constitute a predicate act. (*See* Dkt. No. 75 at 17.)

The remaining facts alleged by Noland alleges—namely that the German Defendants signed a contract with an American buyer that included a New York choice-of-law provision and that called for eventual delivery of the work to the United States—are by themselves insufficient to establish that a "distribution" occurred within the United States. If Noland had alleged that Defendants' conduct in fact touched the United States—such as through marketing of the work from within the United States or through reaching out to potential buyers when present in the United States—this might present a closer question. There is a developing doctrine in copyright law, not yet addressed by the Second Circuit, regarding whether an unconsummated *offer* to distribute a copy of a work for sale can by itself constitute a "distribution" of an unauthorized copy in violation of 17 U.S.C. § 106(3).[3] However, because Noland has not alleged that any conduct in relation to the offered sale of the Log Cabin occurred within the United States, she has not plausibly pleaded a qualifying "domestic predicate act [that] was itself an act of infringement in violation of the copyright laws." *Levitin*, 101 F. Supp. 3d at 385. Accordingly, her claims brought under the U.S. Copyright Act must be dismissed.

In sum, because "[t]he U.S. Copyright Act does not have extraterritorial application," *id.* at 384, and all the relevant conduct alleged in the Second Amended Complaint occurred abroad,

---

[3] *Compare Elektra Entm't Grp., Inc. v. Barker*, 551 F. Supp. 2d 234, 239–45 (S.D.N.Y. 2008) (holding that unconsummated "offers" of distribution of infringing music files violate Section 106(3) but that merely "making available" such files does not), *with Atl. Recording Corp. v. Howell*, 554 F. Supp. 2d 976, 984–85 (D. Ariz. 2008) ("An offer to distribute does not constitute distribution . . . [because the] plain meaning of [Section 106(3)] requires an identifiable copy of the work to change hands in one of the [statute's] prescribed ways for there to be a distribution."); *see also* 2 Nimmer § 8.11 (describing this issue as an "interpretive puzzle" but concluding that "the *offer to distribute*" a work alone, even absent an "*actual act of distribution*," is by itself sufficient to "implicate the copyright owner's distribution right").

the alleged copyright violations Noland challenges in this case are not actionable under the U.S. Copyright Act.[4] Accordingly, all of Noland's federal copyright claims must be dismissed for failure to state a claim upon which relief can be granted.[5]

B. **Noland's Remaining Claims**

Because Noland's federal copyright claims have been dismissed, this Court must determine whether to exercise supplemental jurisdiction over her remaining claims. In addition to the Copyright Act and VARA claims, Noland also alleges violations of the German Copyright Act[6] and negligence claims under New York and German law. (SAC ¶¶ 34, 41, 44, 48, 53, 59, 63, 68, 69–78.) Where a district court has original jurisdiction over certain claims in an action, and additional claims "form part of the same case or controversy," the court has supplemental

---

[4] Because "VARA is part of the Copyright Act," *Mass. Museum of Contemporary Art Found., Inc. v. Buchel*, 593 F.3d 38, 51 (1st Cir. 2010), this conclusion applies with equal force to both her infringement and VARA claims.

[5] District courts in this Circuit have previously held that where the alleged infringing conduct was extraterritorial and no exception applied, the court lacked subject matter jurisdiction over the claims. *Levitin*, 101 F. Supp. 3d at 384; *Hutson v. Notorious B.I.G., LLC*, No. 14 Civ. 2307, 2015 WL 9450623, at *6 (S.D.N.Y. Dec. 22, 2015). However, the Supreme Court has made clear that "the question of extraterritorial application [i]s a 'merits question,' not a question of jurisdiction." *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 116 (2013) (quoting *Morrison v. National Australia Bank Limited*, 561 U.S. 247, 253–54 (2010)). Accordingly, the Court considers Noland's failure to adequately allege relevant domestic conduct in this case to constitute a failure to allege sufficient facts to satisfy an element of her claims on the merits. *See Geophysical Serv., Inc. v. TGS-NOPEC Geophysical Co.*, 850 F.3d 785, 790–91 (5th Cir. 2017) (holding that the extraterritorial application of federal copyright law is not a jurisdictional issue).

[6] The Second Amended Complaint briefly asserts jurisdiction over the German Copyright Act claims based on "the Berne Convention Implementation Act of 1988, and the Universal Copyright Convention." (SAC ¶ 18.) However, Noland cites no specific legal provisions or precedent establishing a source of jurisdiction over foreign copyright claims in that act or convention. As such, she has failed to meet her burden of establishing federal question jurisdiction over the German copyright claims. *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 57 (2d Cir. 2006) ("It is well-settled that the party asserting federal jurisdiction bears the burden of establishing jurisdiction.) Accordingly, the Court considers whether to assert supplemental jurisdiction over the German copyright claims.

jurisdiction over the additional claims. *See* 28 U.S.C. § 1367(a). However, a court "may decline to exercise supplemental jurisdiction over" the additional claims on various grounds, including where "the district court has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3). Here, the Court declines in its discretion to exercise supplemental jurisdiction over the German copyright claims and the negligence claims in this action. Accordingly, Noland's remaining claims are dismissed.

## IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss the Second Amended Complaint is GRANTED.

Because the Court did not reach the merits of either of Defendants' two prior motions to dismiss, Noland is granted leave to replead one final time, provided that she does so in a manner consistent with this opinion. Any such amended complaint must be filed within 21 days of the date of this opinion.

Counsel for Defendants is directed to serve a copy of this Opinion on the unrepresented Defendants.

The Clerk of Court is directed to close the motion at Docket Number 74.

SO ORDERED.

Dated: March 8, 2019
       New York, New York

                                                        J. PAUL OETKEN
                                                   United States District Judge