UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------

CADY NOLAND,
                      Plaintiff,

                -v-

GALERIE MICHAEL JANSSEN *et al.*,
                      Defendants.

17-CV-5452 (JPO)

OPINION AND ORDER

---------------------------------------------------------------

J. PAUL OETKEN, District Judge:

In 1990, Defendant Wilhelm Schürmann, a German art collector, purchased a wooden sculpture by renowned visual artist Cady Noland. The sculpture, which resembles the façade of a log cabin and is aptly titled "Log Cabin Façade," was displayed outdoors in Germany for several years on the bare ground. The elements took their toll, and in December 2010, at the direction of Defendant Schürmann and Defendant KOW, a conservator replaced the sculpture's original, then-rotted wooden components with new parts fabricated by the same Montana manufacturer as the original logs. Noland claims that the refurbishment and later attempt to sell the refurbished work infringed her copyright in the work and violated her moral rights under the Visual Artists Rights Act ("VARA"), 17 U.S.C. § 106A.

Now before the Court is Defendants' motion to dismiss the Third Amended Complaint. (Dkt. No. 93; *see also* Dkt. No. 90 ("TAC").) For the reasons that follow, the motion is granted.

**I.  Background**

    **A.  Factual Background**

For purposes of this motion, the Court assumes the truth of the factual allegations in the Third Amended Complaint. This Court also assumes familiarity with the basic factual background of this case, which is set out in detail in this Court's prior Opinion and Order. *See*

1

*Noland v. Janssen*, 2019 WL 1099805, at *1 (S.D.N.Y. Mar. 8, 2019).  The Court here recounts only those details directly relevant to the disposition of the present motion.

Log Cabin Façade, the artwork at the center of this case, is a sculpture composed mainly of wooden logs, arranged to resemble the front façade of a log cabin in size and structure.  (TAC ¶ 5.)  Noland included the following photograph of the artwork as part of her Third Amended Complaint:



(*See id.*)

In or around 1990, an art gallery in Cologne, Germany, sold Log Cabin Façade to Defendant Wilhem Schürmann.  (TAC ¶ 22.)  Sometime after June 1, 1991, Schürmann contacted Noland and asked her for permission to stain the work and to exhibit it outdoors, which Noland authorized.  (TAC ¶¶ 23–24.)

2

From approximately 1995 to 2005, the stained work resided at a museum in Aachen, Germany, where it was displayed outdoors without a protective foundation, leading to the serious deterioration of the structure.  (TAC ¶¶ 25–27.)  Eventually, Schürmann had the sculpture removed from the museum and hired KOW, a German art gallery, to evaluate the work.  (TAC ¶ 28.)  KOW, in turn, hired a conservator, who concluded that all of the wooden components of the work — including all of the logs — would need to be replaced.  (TAC ¶ 29.)

Using copies of Noland's original specifications and plans, KOW and Schürmann ordered precut logs and other wooden parts from Master Log Homes, the Montana-based company that had supplied the original parts to Noland in 1990.  (TAC ¶ 31.)  The replacement logs, though similar to those initially used by Noland, differ in some subtle respects, namely, in their natural imperfections and variations.  (TAC ¶ 32.)  The logs were shipped to Germany where they were assembled into a "refurbished" Log Cabin Façade.  (TAC ¶ 33.)

Defendant Michael Janssen owns and operates the eponymous Janssen Gallery (also a defendant here) in Berlin, Germany.  (TAC ¶¶ 11–12.)  After the reconstitution of Log Cabin Façade, Schürmann hired Janssen Gallery to act as his agent in reselling the work.  Janssen enlisted the help of Marisa Newman Projects, LLC ("Newman"), to help market and sell the reconstituted Log Cabin Façade in the United States.  (TAC ¶¶ 35, 37.)  Newman, in turn, obtained the help of Brett Shaheen, an Ohio-based art dealer.  (TAC ¶ 38.)  In the course of soliciting buyers, Newman (in New York) sent to Shaheen (in Ohio) photographs and plans related to the original and refurbished Log Cabin Façade.  (TAC ¶ 39.)  Shaheen eventually succeeded in finding an Ohio-based buyer.  (TAC ¶¶ 41–44.)  But as this Court's prior opinion recounts in greater detail, the sale ultimately fell through after Noland renounced the refurbished work.  *See Noland*, 2019 WL 1099805, at *2.

### B. Procedural Background

Noland initiated this action on July 18, 2017. (*See* Dkt. No. 1.) On March 8, 2019, this Court granted Defendants' motion to dismiss the then-operative Second Amended Complaint (Dkt. No. 71 ("SAC")). *Noland*, 2019 WL 1099805; (Dkt. No. 85). Noland's complaint, the Court held, failed to allege a basis for the extraterritorial application of the U.S. copyright laws to Defendants' conduct in Germany. *See Noland*, 2019 WL 1099805 at *3–4. Specifically, Noland had not alleged a domestic "predicate act" that would render Defendants liable for conduct abroad. *Id.* Noland had identified two such possible acts: (1) Defendants' purchase of the wood logs in the United States; and (2) Defendants' attempted sale of the work to an American buyer pursuant to a contract calling for delivery of the work to the United States. *See id.* at *3. Neither, however, itself constituted a violation of the copyright laws, and thus neither constituted a predicate act offering a basis for extraterritorial application of the copyright laws. *Id.* at *3–4. Accordingly, the Court dismissed the copyright and VARA claims and then declined to exercise pendent jurisdiction over the remaining German and state law claims. *Id.* at *3–5.

Noland was granted leave to amend the complaint "one final time," and she filed the now-operative Third Amended Complaint on April 2, 2019. *Id.* at *6; (Dkt. No. 90). Defendants moved to dismiss on May 17, 2019. (Dkt. No. 93.) That motion is fully briefed and ripe for the Court's consideration.

## II. Legal Standard

To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible if the well-pleaded factual allegations of the complaint, presumed true, permit the court to "draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

### III. Discussion

#### A. Extraterritoriality

Defendants first renew the same objection this Court found dispositive on the prior motion to dismiss: that Noland alleges no basis for the extraterritorial application of the U.S. copyright laws to the attempted refurbishment of the work in Germany.

At the outset, the Court observes that Noland's Third Amended Complaint does not clearly allege any claims requiring extraterritorial application of the copyright laws. Instead, each claim in the Third Amended Complaint seems to rest upon wholly domestic conduct, namely, the purchase of the logs and the marketing of the sculpture in the United States. (*See* TAC ¶¶ 61–88.) Nonetheless, because there is at least a modicum of ambiguity in the complaint, and because both parties seem to assume that Noland alleges extraterritorial violations of the copyright laws, the Court proceeds on the parties' shared understanding.

The same legal framework governs this issue as on the first motion to dismiss. "It is well established that copyright laws generally do not have extraterritorial application." *Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 73 (2d Cir. 1988). Notwithstanding that limitation, "an individual[] who commits an act of infringement in the U.S. [that] permits further reproduction outside of the U.S . . . is liable for infringement under the U.S. Copyright Act." *Levitin v. Sony Music Entm't*, 101 F. Supp. 3d 376, 385 (S.D.N.Y. 2015); *see also* 5 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 17.02 (2019). To render an infringer liable for conduct occurring abroad, however, the predicate domestic act must *independently* violate the copyright laws. *See Levitin*, 101 F. Supp. 3d at 385.

5

Noland identifies two potential predicate acts.  First, she argues that Defendants, via Newman, distributed in the United States plans and photographs of Log Cabin Façade for the purposes of marketing it for sale.  (*See* Dkt. No. 96 at 14.)  The distribution and display of those photographs and plans, Noland contends, independently violate sections 106(3) and 106(5) of the Copyright Act, which protect a copyright holder's exclusive distribution and display rights, respectively.  (*See id.*)

Even if the distribution and display of those materials did infringe any valid copyright, however, they do not render Defendants liable for the alleged infringement abroad.  That is because the attempted sale of the refurbished work *postdates* the alleged reproduction in Germany.  The predicate act doctrine permits a plaintiff to "collect damages from foreign violations of the Copyright Act so long as the foreign conduct *stems from* a domestic infringement."  *Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 306 (4th Cir. 2012) (emphasis added); *see also Sheldon v. Metro-Goldwyn Pictures Corp.*, 106 F.2d 45, 52 (2d Cir. 1939), *aff'd*, 309 U.S. 390 (1940) (holding that copyright holders "acquire[] an equitable interest in [infringing copies] as soon as they [are] made [domestically], which attache[s] to any profits from their exploitation" irrespective of the situs of the exploitation).  It does not follow, however, that plaintiffs may recover damages for infringement abroad if the causal and temporal relationship between the infringement at home and abroad runs the other way.  *See Armstrong v. Virgin Records, Ltd.*, 91 F. Supp. 2d 628, 635 (S.D.N.Y. 2000) ("[N]o predicate acts of infringement would appear to have occurred within the United States that could justify application of United States copyright law to subsequent acts of infringement undertaken [abroad].  Rather, even when crediting [plaintiff's] claims of infringement, it would seem that our unfolding story of infringement begins abroad.").

6

Noland also argues that the purchase of the wooden components from a Montana manufacturer is a predicate act to the refurbishment abroad. (Dkt. No. 96 at 15–16.) But this Court, analogizing to other cases involving domestic preparations for infringement abroad, already held that the alleged purchase of the wood is not a predicate act because it is not independently an act of infringement. *See Noland*, 2019 WL 1099805, at *3. The Court has no reason to revisit its prior holding, and the law of the case governs.

Accordingly, Noland has failed to allege a predicate act that would render Defendants liable for their conduct occurring in Germany. And "[b]ecause 'VARA is part of the Copyright Act,'. . . this conclusion applies with equal force to both her infringement and VARA claims," to the extent those claims rest on conduct abroad. *Id.* at *5 n.4 (citing *Mass. Museum of Contemporary Art Found., Inc. v. Buchel*, 593 F.3d 38, 51 (1st Cir. 2010)).

## B.     Domestic Allegations

The conclusion that Noland cannot avail herself of the predicate act exception is not alone fatal to the complaint, however, as it was on the last motion to dismiss, because the theory of Noland's case embodied in the Third Amended Complaint differs from that in her previously dismissed Second Amended Complaint. Each of the Copyright Act violations alleged in the Second Amended Complaint occurred *in* Germany: "Defendants' 'destruction' of her original work, their 'copying' of that work by replacing all of its wooden logs, their continued display of the 'copied' work, and their efforts at effectuating a sale of the 'copied' work." *Noland*, 2019 WL 1099805, at *3. The Court's determination that the Second Amended Complaint alleged no predicate act warranting extraterritorial application of the Copyright Act was therefore a sufficient ground to dismiss that entire complaint. With her Third Amended Complaint, by contrast, Noland seeks to hold Defendants liable for discrete alleged violations occurring in the United States. (*See* TAC ¶¶ 64–65, 67–68, 73, 80–81, 85.)

To prevail on the motion to dismiss, then, Defendants must demonstrate that the domestic conduct alleged does not independently make out a claim for either copyright infringement or a violation of Noland's rights under VARA. The Court addresses each legal theory in turn.

### 1. Copyright Infringement

Assuming but not deciding that Log Cabin Façade is entitled to copyright protection, the Court concludes that the distribution of photos and plans of the work in connection with its attempted sale constituted fair use.

"In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; (4) and the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107.

As to the first factor, "the primary inquiry is whether the use 'communicates something new and different from the original or [otherwise] expands its utility,' that is, whether the use is 'transformative.'" *Fox News Network, LLC v. Tveyes, Inc.*, 883 F.3d 169, 176 (2d Cir. 2018) (alteration in original) (quoting *Authors Guild v. Google, Inc.*, 804 F.3d 202, 214 (2d Cir. 2015)).

The Court is persuaded by the reasoning of other courts that have found that disseminating photographs of copyrighted works "to provide information to legitimate purchasers under the first sale doctrine" rather than for "the artistic purpose of [the creator's] original" work is transformative. *Stern v. Lavender*, 319 F. Supp. 3d 650, 681 (S.D.N.Y. 2018) (alteration in original) (citing *Rosen v. eBay, Inc.*, No. 13 Civ. 6801, 2015 WL 1600081, at *14 (C.D. Cal. Jan. 16, 2015)). Though Defendants' "aim . . . was surely commercial," a "use of the copyrighted works in this way is not exploitative in the traditional sense." *Id.* (alterations,

internal quotation marks, and citation omitted).  "Rather, the purpose of the reproductions [is] completely different from the purpose of the original[], and so they [are] transformative."  *Id.* (first and third alterations in original) (citation omitted).

Though she does not seriously dispute this principle, Noland nonetheless contends that it is inapplicable here because the sale of the refurbished work was not protected under the first sale doctrine.  The first sale doctrine permits "the lawful purchaser of a copy . . . to resell, lend, give, or otherwise transfer that copy without violating the copyright holder's exclusive right of distribution."  *Capitol Records, LLC v. ReDigi Inc.*, 910 F.3d 649, 655 (2d Cir. 2018); *see also* 17 U.S.C. § 109(a).  The statute provides in relevant part, however, that only copies "lawfully made under this title" may be sold pursuant to the first sale doctrine.  17 U.S.C. § 109(a).  The question, then, is whether Schürmann's refurbished work is "lawfully made" in the relevant sense.

On Noland's view, the refurbished work is not "lawfully made" because the refurbishment allegedly violated *German* law.  (*See* Dkt. No. 96 at 6–9.)  But that argument strains the statutory text beyond what it can bear.  Noland's conclusion would require the Court to interpret the statutory phrase "under this title" to mean "under any applicable domestic or foreign copyright law."  But the phrase "this title" is most naturally understood to refer to Title 17 of the United States Code, in which the provision appears — *i.e.*, the Copyright Act and its amendments.  In short, the statute's straightforward text overwhelmingly suggests that German law is irrelevant to the applicability of the first sale doctrine.

In support of her seemingly strained interpretation, Noland invokes the Supreme Court's decision in *Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. 519 (2013), which she claims establishes that the phrase "lawfully made under this title" is not "geographically limited."  (Dkt.

9

No. 96 at 7.)  But the Supreme Court in *Kirtsaeng* held only that the phrase "made under this title" is non-geographic in the sense that the phrase means "made in accordance with this title" rather than "made in territories in which the Copyright Act is law."  568 U.S. at 529–30.  Accordingly, the Court held, a copy made lawfully in Thailand was still covered by the first sale doctrine when it was resold in the United States, despite the copy's not being made in the United States.  *Id.*  Because it was undisputed that the copy made in Thailand was lawful, the *Kirtsaeng* Court had no occasion to consider the question posed here: whether a copy made outside the United States that is unlawful under the applicable foreign law is "made lawfully under this title" despite its illegality (and setting aside its geographic origin).  *Kirtsaeng* is therefore of no help to Noland here.  And in the absence of any contrary authority, the Court has no basis to deviate from the statute's unambiguous text.

      Two important qualifications are in order, however.  First, Noland rests her first-sale argument solely on the refurbishment's alleged unlawfulness under *German* law.  The Court therefore holds today only that the phrase "under this title" means under Title 17 of the United States Code, which is sufficient to dispose of Noland's contention.  Noland has not raised the question, however, and therefore the Court does not decide, whether a copy that would be unlawful under that title *if the Copyright Act applied extraterritorially* is "made lawfully under this title."  Second, the Court does not decide whether the conclusion that the underlying sale is protected by the first sale doctrine is, as both parties appear to assume, necessary to the determination that the dissemination of the copies in service of that sale constituted a transformative use under the first fair use factor.  It is sufficient for these purposes to say that it at least bears on the non-exploitative nature of the use.

Moving on to the second fair use factor, the Court recognizes that the creative nature of the copyrighted work — a sculpture intended as a means of artistic expression — would typically weigh against fair use. But "[t]his factor . . . has rarely played a significant role in the determination of a fair use dispute," *Fox News Network, LLC*, 883 F.3d at 178 (internal quotation marks and citation omitted), and is of "limited usefulness where the creative work of art is being used for a transformative purpose." *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 612 (2d Cir. 2006). Accordingly, this factor weighs only slightly against a finding of fair use.

The third factor, the amount and substantiality of the portion used in relation to the copyrighted work as a whole, also weighs against fair use, given that the images allegedly depicted the entire work. But like the second factor, the third factor is of limited significance in the context of a legitimate sale: "A buyer cannot be expected to purchase a work of art having seen only a snippet of it." *Stern*, 319 F. Supp. 3d at 682. Accordingly, this factor "provides relatively limited guidance in the fair use equation." *Id.*

The fourth factor, market impact, is "the single most important element." *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 566 (1985). Again, the Court does not consider this factor in isolation: "[T]he more transformative the secondary use, the less likelihood that the secondary use substitutes for the original, even though the fair use, being transformative, might well harm, or even destroy, the market for the original." *Cariou v. Prince*, 714 F.3d 694, 709 (2d Cir. 2013) (internal quotation marks and citation omitted). "The operative question is 'whether the secondary use *usurps* the market of the original work,'" *i.e.*, whether "the infringer's target audience and the nature of the infringing content is the same as the original." *Stern*, 319 F. Supp. 3d at 682 (quoting *Cariou*, 714 F.3d at 708–09).

Noland does not argue that the photographs and plans adversely impacted the market for the original work; to the contrary, she admits that the dissemination of those copies "helped establish the market [for the original] at a considerable price." (Dkt. No. 96 at 11.) Noland instead contends that this factor nonetheless tips in her favor because the sellers were not entitled to the benefits of the sale of the refurbished Log Cabin Façade, as the sale was not protected by the first sale doctrine. (*Id.*) But Defendants' entitlement to sell the refurbished work is orthogonal to the impact of the photographs and plans on the market for the original work. And it is the dissemination of those photographs and plans — *not* the refurbishment and sale of Log Cabin Façade — that is under consideration. In any event, as the Court has already held, the first sale doctrine *does* apply with full force to the sale of the refurbished work. The fourth factor tips decidedly toward fair use.

Given the transformative nature of the use, the lack of adverse impact on the market for the original, and the relative insubstantiality of the other two fair use factors in this context, the Court concludes that the dissemination of the photographs and plans in furtherance of the legitimate sale constituted fair use. The copyright infringement claims are therefore dismissed.

### C. VARA Claims

Finally, the Third Amended Complaint alleges that the marketing of Log Cabin Façade using Noland's name, as well as the related dissemination of the photographs and plans, violated Noland's rights under VARA. (*See* TAC ¶¶ 64–65, 72–73.) Noland faces an uphill battle in defending her VARA claims: the creation of the original Log Cabin Façade concededly predates VARA's effective date, *see Carter v. Helmsley-Spear, Inc.*, 71 F.3d 77, 83 (2d Cir. 1995), and the original work as sold in 1990 does not qualify for that statute's protection.

Noland does not contest that the sculpture did not initially qualify for protection under VARA. Rather, she argues that she authored a derivative work when she permitted Schürmann

to stain the sculpture sometime after the effective date of the statute, and that derivative work is entitled to VARA protection.  (Dkt. No. 96 at 16–20.)  Even if the Court were to make many of the leaps required by Noland's line of reasoning — that the staining created a copyrightable derivative work, that the derivative work qualifies for protection under VARA, and that the marketing of the refurbished stained work violated those rights — Noland *still* would not prevail on her claim.  That is because the author of the derivative work — and therefore the holder of any VARA rights vis-à-vis the staining — would be Schürmann, *not* Noland.  According to Noland's own allegations, the idea and request to stain the work originated with Schürmann and it was Schürmann who effectuated the staining.  (TAC ¶¶ 23–24.)  He would therefore be the author of the stained derivative work.  *See Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989) ("As a general rule, the author is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection.").  That Noland gave him permission to do so when asked is of no moment; a copyright holder's licensing of a derivative work by a secondary author is a routine feature of copyright law.  And though Noland now argues that her role in the staining of the work was more substantial, including choosing the stain color, she "cannot supplement [her] fourth attempt at pleading with new facts asserted in [her] opposition brief."  *Diego Beekman Mut. Hous. Ass'n Hous. Dev. Fund Corp. Hdfc v. Dish Network, L.L.C*, No. 15 Civ. 1094, 2016 WL 1060328, at *3 (S.D.N.Y. Mar. 15, 2016).  The Court therefore has no occasion to consider the relevance of these new, belated allegations.

     Of course, the creation of the derivative work would not terminate any preexisting copyright in the underlying work that Noland held as the author of the pre-staining sculpture.  *See* 1 Nimmer on Copyright § 3.07 (2019).  But she is not able to grandfather in her preexisting

sculpture to VARA's coverage simply by virtue of the later derivative work, of which she is not the author.  *Cf.* 17 U.S.C. § 103(b) ("The copyright in [a derivative] work is independent of, and does not affect or enlarge the scope . . . of any copyright protection in the preexisting material."). The remaining VARA claims must be dismissed.

**IV.  Conclusion**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.

The Clerk of Court is directed to close the motion at Docket Number 93 and to close this case.

SO ORDERED.

Dated:  June 1, 2020
       New York, New York

_____
J. PAUL OETKEN
United States District Judge